# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TEXAS EASTERN TRANSMISSION, LP, a limited partnership of the State of Delaware <br> Plaintiff, <br><br> v. <br><br> 0.077 Acres Of Land, More or Less, In The City of Jersey City, Hudson County, New Jersey; COLES JERSEY DEVELOPMENT CO., LLC; OGDEN REALTY CO.; JANE AND JOHN DOES 1 through 50  (fictitious name defendants); and ABC BUSINESS ENTITIES 1 through 50 (fictitious name defendants), <br><br> Defendants. | Civil Action No. _____ |

---

## BRIEF IN SUPPORT OF PLAINTIFF, TEXAS EASTERN TRANSMISSION, LP'S APPLICATION FOR (1) AN ORDER OF TAKING AND (2) IMMEDIATE POSSESSION OF THE EASEMENT

---

**DECOTIIS, FITZPATRICK & COLE, LLP**
**Glenpointe Centre West**
**Teaneck, New Jersey 07666**
**Tel.: (201) 928-1100**
**Attorneys for Plaintiff,**
**Texas Eastern Transmission, LP**

**On the Brief**
    **Michael J. Ash, Esq.**

**Of Counsel**
    **Jeffrey D. Smith, Esq.**

## PRELIMINARY STATEMENT

Plaintiff Texas Eastern Transmission, LP ("Texas Eastern") respectfully submits this brief in support of its Motion for an Order of Taking and Motion for an Order for Preliminary Injunction. Specifically, Texas Eastern seeks to have this Court:

1)  Enter an Order of Taking stating that Texas Eastern has taken the permanent easement on the property that is the subject of this action; and

2)  Exercise its equitable powers in order to grant Texas Eastern immediate possession of the easement.

Texas Eastern has been designated and approved by the Federal Energy Regulatory Commission ("FERC") to build a natural gas pipeline extending from Linden, New Jersey to downtown Manhattan.  Pursuant to the Natural Gas Act, 15 U.S.C., §717 et seq., (the "Natural Gas Act", or the "NGA"), FERC issued a Certificate of Public Convenience and Necessity (the "FERC Certificate") on May 21, 2012, authorizing Texas Eastern to construct what is referred to as the New Jersey – New York Expansion Project ("NJ-NY Project", or the "Project").

The Natural Gas Act explicitly authorizes a natural gas company like Texas Eastern to acquire property interests by condemnation when it is unable to acquire the property interests by agreement with the property owner. 15 U.S.C. § 717f(h). Thus, Texas Eastern has filed a Verified Complaint to acquire easements needed to construct, operate and maintain the NJ-NY Project on property (the "Property") owned by Coles Jersey Development Co., LLC (the "Defendant Owner").   Now that the Project has been completed it is critical to secure the easement rights required for the pipeline right-of-way.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS[1]

### A.   OVERVIEW OF THE NJ-NY PROJECT

The NJ-NY Project involves construction of approximately 15.0 miles of new 30-inch diameter and 4.8 miles of 42-inch diameter replacement pipeline and related facilities that transport natural gas in interstate commerce. The pipeline portion of the Project begins in Linden, New Jersey, crosses under the Arthur Kill to Staten Island near the Goethals Bridge and then follows a route through Staten Island.  The pipeline crosses under the Kill Van Kull to Bayonne, New Jersey and then extends into Jersey City from where it crosses under the Hudson River and terminates on the West Side of lower Manhattan near Route 9A and Gansevoort Street. Gessner Cert., ¶3.

The construction of the NJ-NY Project responded to market demands in New York City and the New Jersey Metropolitan Area. The Project serves several important governmental interests.  It: (a) provides new points of interconnection for existing and new customers, including New Jersey and New York local distribution companies, delivers diverse sources of natural gas supply to high-growth New Jersey and New York markets, including a new direct pipeline connection to the Borough of Manhattan; (b) meets escalating residential and commercial demands for energy with clean-burning natural gas in the growing New Jersey and New York metropolitan area; (c) provides new and enhanced energy infrastructure to support economic development in the New Jersey and New York metropolitan area; and (d) provides opportunities to improve regional air quality by utilizing clean-burning natural gas in lieu of fuel oil in existing and future residential, commercial and industrial facilities, thereby significantly reducing greenhouse gas emissions and other pollutants.  Verified Complaint, ¶4.

---

[1] The facts set forth below are taken from the Certification of Franklin S. Gessner ("Gessner Cert.") and the Verified Complaint filed herewith.

The FERC Certificate issued on May 21, 2012 authorizes Texas Eastern to construct, operate, and maintain the Project. Gessner Cert., Ex. A.  FERC has found that the Project is in the public interest.  Id.  The Certificate expressly and unequivocally states that the Project "must [be] construct[ed] and make available for service . . . by November 1, 2013." Id. at p. 43.

**B.     CONSTRUCTION OF THE NJ-NY PROJECT**

Construction of the Project began on June 29, 2012 and was completed by the November 1, 2013 in-service date.   In the northern portion of Jersey City, the pipeline was installed by the horizontal directional drill ("HDD") method.  Gessner Cert., ¶ 7.  HDD installation requires a subsurface crossing of multiple properties with a single entry and exit point at each end of the spread.  Id.  The HDD construction crew is located at each end of the drill to work in a sequence from the entry point to direct the drill underneath the property in accordance with the FERC approved alignment and continues along contiguous property emerging at a pre-determined exit point.  Id.  All HDD construction activities are completed underground with the exception of a surface tracking wire that is temporarily installed over the pipeline alignment to support the guidance of the drill. Id.

A segment of the alignment for the pipeline in north Jersey City and the entry point for the "18th Street HDD" are depicted on FERC approved alignment sheet LD-A-1077.  Gessner Cert., ¶8.  The pipeline was constructed in accordance with the FERC approved alignment of the permanent right-of-way depicted on LD-A-1077.  Id.  The alignment along LD-A-1077 required the acquisition of permanent and temporary easements on property identified as Tract HUD-98.2 (Block 6005, Lot 7) and Tract HUD-98.3 (Block 6005, Lot 13). Id.

**C.     TEXAS EASTERN'S GOOD FAITH EFFORTS TO ACQUIRE THE EASEMENTS THROUGH NEGOTIATIONS**

Based on available title information and published municipal tax maps, the fee owner of Tract HUD-98.2 (Block 6005, Lot 7) was New Jersey Transit Corporation.  Gessner Cert., ¶9.

Texas Eastern negotiated with New Jersey Transit Corporation and was granted an easement for Tract HUD-98.2 (Block 6005, Lot 7) by Grant of Easement Agreement dated October 5, 2012 recorded on October 12, 2012 in the Hudson County Register of Deeds in Book 8874, Page 698. Id.   Based on available title information and published tax maps, the fee owner of Tract HUD-98.3 (Block 6005, Lot 13) was Ogden Realty Co.  Gessner Cert., ¶10.  Texas Eastern acquired temporary and permanent easements from Ogden Realty Co. by Order of Taking entered June 28, 2012 in Docket No. 12-3412-SRC.   Id.   On June 29, 2012, Texas Eastern deposited $2,110,100.00 as just compensation for the acquisition of temporary and permanent easements on Tract HUD-98.3 (Block 6005, Lot 13).  Id.

Upon completion of the pipeline installation in March 2013, post construction fieldwork, surveying and a review of title documents by Texas Eastern agents identified a possible discrepancy between the property line of Block 6005, Lot 7 and Block 6005, Lot 13 depicted in the official municipal tax map and title documents.  Gessner Cert., ¶11.  Texas Eastern agents opined that a portion of Block 6005, Lot 7, including a portion of easement Tract HUD-98.2, may be owned in fee by the adjacent owner of Block 6005, Lot 13, Ogden Realty Co., and not by New Jersey Transit Corporation as indicated on the official Tax Maps of Jersey City.  Id.  The question as to the property boundary between Block 6005, Lot 7 and Lot 13 was communicated to counsel for Ogden Realty Co. in the course of negotiations for the acquisition of easements on Tract HUD-98.3 (Block 6005, Lot 13).  Id.  An offer of $3,000,000.00 was made to Ogden Realty Co. for the easements on Tract HUD-98.3 (Block 6005, Lot 13) together with a grant of easement on Tract HUD-98.2 (Block 6005, Lot 7) based on any right or title Ogden Realty Co. had to a portion of Lot 7.

During the course of negotiations with Ogden Realty Co., Texas Eastern agents learned of a pending sale of Block 6005, Lot 13 to Hoboken Brownstone Co.  Gessner Cert., ¶12.  In a meeting on June 4, 2013, Texas Eastern agents offered $3,000,000.00 to Hoboken Brownstone

Co. as future owners of the Tract HUD-98.3. Id.    On June 13, 2013, representatives of Ogden Realty Co. and Hoboken Brownstone Co. met at Texas Eastern's offices to negotiate a settlement of the pending condemnation of Tract HUD-98.3 (Block 6005, Lot 13) and a grant of easement rights on Tract HUD-98.3 (Block 6005, Lot 7), to the extent Ogden Realty Co. had rights or color of title to a portion of Block 6005, Lot 7.  Gessner Cert., ¶13.  The parties reached a settlement of $3,500,000.00 for the acquisition of Tract HUD-98.3 (Block 6005, Lot 13) and a grant of easement rights on Tract HUD-98.3 (Block 6005, Lot 7).  Id.  This settlement was memorialized in a Consent Order for Final Judgment Fixing Compensation entered in Docket No. 12-3412-SRC-CLW on August 6, 2013.  Gessner Cert., ¶16.

On or about July 3, 2013, Ogden Realty Co. conveyed Block 6005, Lot 13, together with additional properties to Coles Jersey Development Co., LLC which purports to include Block 6005, Lot 7.  Gessner Cert., ¶14.  By correspondence dated July 3, 2013, counsel for Ogden Realty Co., advised Texas Eastern that all proceeds from the settlement should be directed to Ogden Realty Co. and that Hoboken Brownstone Co. released all rights to the proceeds of the settlement.  Gessner Cert., ¶15.  While Texas Eastern acquired an easement for Tract HUD-98.2 (Block 6005, Lot 7) by grant from New Jersey Transit Corporation, Texas Eastern also sought an easement with a grant from Coles Jersey Development Co, LLC for any right or title to a portion of Block 6005, Lot 7 by virtue of the disputed property line with Block 6005, Lot 13.  Gessner Cert., ¶17.  Consistent with the terms of the settlement between the parties, Texas Eastern sought an instrument granting easement rights for Tract HUD-98.3 (Block 6005, Lot 7) from Coles Jersey Development Co., LLC.  Id.  Counsel for Texas Eastern communicated with Daniel Gans, representative of Coles Jersey Development Co., LLC, to obtain a grant of easement for Tract HUD-98.3 (Block 6005, Lot 7).  Id.

By correspondence dated October 24, 2013, counsel for Coles Jersey Development Co., LLC wrote to counsel for Texas Eastern and raised concerns over the pipeline's route across

Tract HUD-98.3 (Block 6005, Lot 7) and suggested a meeting to discuss the status of the settlement with Ogden Realty Co. Gessner Cert., ¶18.   On or about November 19, 2013, Texas Eastern agents met with counsel for Coles Jersey Development Co., LLC and Ogden Realty Co. in an attempt to resolve this matter amicably.   Gessner Cert., ¶19.   Of the additional $1,389,900.00 owed to Ogden Realty Co. under the terms of the settlement in the Consent Order, $1,134,900.00 representing a portion of the settlement proceeds allocated for the easements acquired on Block 6005, Lot 13 was paid to Ogden Realty Co. Id.  The balance of $255,000.00 representing a portion of the settlement proceeds allocated for the easements acquired on Block 6005, Lot 7 has been held back until a grant of easement is forthcoming. Id.  The compensation for the easement rights on Block 6005, Lot 7 in the amount of $255,000.00 was identified as the compensation for the "additional permanent taking" as indicated in correspondence from Ogden Realty Co.'s counsel dated October 24, 2013. Id.

Texas Eastern requires a permanent easement as more particularly described in the Verified Complaint as Tract HUD-98.3.   Gessner Cert., ¶20.   Texas Eastern has been unable to acquire the easement identified as Tract HUD-98.3 from Coles Jersey Development Co., LLC. Gessner Cert., ¶21.   Texas Eastern seeks to acquire the 0.077 acre easement on a portion of Lot 7 from Coles Jersey Development Co., LLC to the extent they acquired any right or title to that parcel in the conveyance from Ogden Realty Co.  Since the settlement with Ogden Realty Co. included a grant of easement rights on Tract HUD-98.3, the $255,000.00 allocation of the previous settlement with Ogden Realty Co. is the negotiated consideration for the easement rights sought to be acquired by this action.

## LEGAL ARGUMENT

I.    **THE SCOPE OF REVIEW IN THE PRESENT ACTION IS LIMITED TO THE ACQUISITION OF THE SUBJECT PROPERTY**

The scope of review in condemnation proceedings brought under Section 7(h) of the Natural Gas Act is limited to the acquisition of the subject property. <u>Texas Eastern Transmission Corp. v. Bowman</u>, 115 So.2d 797 (La. 1959); <u>see also</u>, <u>USG Pipeline Co. v. 1.74 Acres in Marion County, Tennessee</u>, 1 F. Supp. 2d 816 (E. D. Tenn. 1998). A court's role is to authorize the condemnation of property included in a FERC Certificate. <u>See</u>, <u>Williams Natural Gas Co. v. Oklahoma City</u>, 890 F.2d 255, 262 (10th Cir. 1989).  Any dispute as to the merits of the certificate of public convenience and necessity must be brought to FERC for rehearing. <u>See</u>, 15 U.S.C. §717r(a). In a condemnation action, a property owner may not dispute the propriety or validity of the FERC certificate as a defense to the taking.  <u>McCulloch Interstate Gas Corp. v. Federal Power Comm'n</u>, 536 F.2d 910, 913 (10th Cir. 1976).

The FERC Certificate may not be collaterally attacked in this action.  Texas Eastern is entitled to an Order of Taking because: (1) it holds a FERC Certificate authorizing the construction of the Project, (2) the easement on the Property is necessary to provide protection from potential development over the pipeline, and (3) Texas Eastern has been unable to purchase the easements from the Defendant Owner. In addition, Texas Eastern should be granted a preliminary injunction allowing it to immediately enter the easements on the Property. <u>See</u>, 15 U.S.C. § 717r (review of a FERC Certificate is the exclusive province of the appropriate court of appeals); <u>Guardian Pipeline, L.L.C. v. 529.42 Acres of Land</u>, 210 F.Supp.2d at 975 (all objections to natural gas pipeline company's condemnation of land preempted as any such objections should have been raised with FERC or appropriate court of appeals); <u>Portland Natural Gas Transmission System v. 4.83 Acres of Land</u>, 26 F.Supp.2d 332, 334 n.1 (D.N.H. 1998) (district court in a condemnation action lacks jurisdiction to entertain any challenge to validity of a Certificate); <u>Tennessee Gas Pipeline Co. v. Massachusetts Bay Transp. Auth.</u>, 2 F.Supp.2d, 106,110 (D. Mass. 1998) (district court's jurisdiction in an eminent domain action under the

NGA extends only to examining the scope of the Certificate and ordering condemnation as authorized by the Certificate); Kern River Gas Transmission Company v. Clark County, 757 F. Supp. 1110, 1116 (D.Nev. 1990) (landowner may not challenge FERC-approved pipeline route in eminent domain proceeding arising under the NGA); Tennessee Gas Pipeline Co. v. 104 Acres of Land, More or less, 749 F. Supp. 427, 430 (D.R.I. 1990) (challenges to a FERC Certificate can be raised only by rehearing/appeal and landowner may not challenge a FERC Certificate in an eminent domain action arising under the NGA). See also, Williams Natural Gas Co. v. Oklahoma City, 890 F.2d 255, 264 (10th Cir. 1989), cert. denied, 497 U.S. 1003 (1990) (state court injunction of federal eminent domain proceeding was an impermissible collateral attack on a FERC Certificate).

The findings of the FERC Certificate preempt any state or local regulation of the construction of the Project. While FERC encourages natural gas pipeline companies to cooperate with state and local agencies, the authority of state and local agencies is extremely limited. State and local permits issued with respect to a FERC approved project must be consistent with conditions in the FERC Certificate. Further, the Certificate provides that state and local agencies may not prohibit or unreasonably delay the construction or operation of the facilities approved in the certificate order. Gessner Cert., Ex. A, ¶124. FERC's preemption of state and local agencies is based on a 1988 Supreme Court case which held that because FERC had exclusive jurisdiction over the rates and facilities of natural gas companies under the Natural Gas Act, a state agency may not regulate matters directly considered by FERC. Schneidewind v. ANR Pipeline Co., 485 U.S. 293 (1988). Similarly, the Second Circuit held in National Fuel Gas Supply Corp. v. Public Service Commission of the State of New York, 894 F.2d 571 (2nd Cir. 1990), cert. denied, 110 S. Ct. 3240 (1990), that "states may not engage in concurrent site—specific environmental review." Other courts have adopted the Second Circuit's findings. See, for example, Northern Natural Gas Co., et al. v. Iowa Utilities Board, et al., 377 F.3d 817 (8th

Cir. 2004) ("it is undeniable that Congress delegated authority to the FERC to regulate a wide range of environmental issues relating to pipeline facilities, and we agree with the conclusion of the Second Circuit…").

National Fuel stands for the proposition that the NGA preempts state and local agencies from regulating the construction and operation of interstate pipeline facilities. State or local agencies have also been preempted from regulating the safety of interstate natural gas pipelines. The Natural Gas Pipeline Safety Act ("NGPSA"), as amended, specifically preempts the application of state safety standards to interstate natural gas pipelines[2]. 49 U.S.C. §60104(c). See also, ANR Pipeline Co. v. Iowa State Commerce Commission, 828 F.2d 465 (8th Cir.1987) and Olympic Pipe Line Company v. City of Seattle, 437 F.3d 872 (9th Cir. 2006). State and local authorities have also been specifically preempted from imposing zoning laws or building regulations that would interfere with the construction of a FERC-approved project. The Rhode Island district court found that "because the federal regulatory scheme comprehensively regulates the location, construction and modification of natural gas facilities, there is no room for local zoning or building code regulations on the same subjects" Algonquin LNG v. Loqa, 79 F. Supp. 2d 49 (D.R.I. 2000). See also, New York State Natural Gas Corporation v. Town of Elma, 182 F.Supp. 1 (W.D.N.Y., 1960). Thus, the Court's role here is limited to determining whether the condemnation of the subject property is duly authorized by the FERC Certificate. As a result, Texas Eastern is entitled to an order granting condemnation of the easements sought on the subject property and authorizing Texas Eastern to take the easement.

Texas Eastern should also be granted a preliminary injunction allowing it to immediately possess the easement. The order allowing Texas Eastern to take the easement satisfies the requirement of likelihood of success on the merits. Texas Eastern also faces an immediate threat of irreparable harm if it is not allowed to enter the Property, and FERC has determined that the

---

[2] The NGPSA was combined with the Hazardous Liquid Pipeline Safety Act of 2002 and re-codified at 49 U.S.C. §60101 et seq.

construction of the NJ-NY Project is in the public interest.  There is no harm to the Defendant Owner if the motion for immediate entry is allowed because they will be compensated for the taking of the easement in due course.  Accordingly, Texas Eastern's motion for a preliminary injunction should also be granted.

## II.   TEXAS EASTERN IS ENTITLED TO AN ORDER AUTHORIZING THE TAKING OF THE EASEMENT ON THE PROPERTY

The Natural Gas Act states that "[f]ederal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary for the public interest." 15 U.S.C. § 717(a). Hence, the Natural Gas Act establishes a comprehensive federal regulatory scheme for the transportation or sale of natural gas in interstate commerce. 15 U.S.C. § 717(b). Consequently, "[n]atural gas companies are subject to the exclusive jurisdiction of [FERC]," Islander East Pipeline Co, LLC v. Connecticut Dept. of Environmental Protection, 467 F.3d 295, 299 (2d. Cir 2006), and may not undertake "the construction . . . of any facilities . . . or operate any such facilities . . . unless" FERC has issued a Certificate "authorizing such acts or operations . . . ." 15 U.S.C. § 717f(c).

The NGA specifically provides that a natural gas company, such as Texas Eastern, has the authority to condemn any property interest needed to construct natural gas pipelines:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipeline or pipelines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary for the proper operation of such pipeline or pipelines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. §717f(h) (emphasis added).

Thus, a natural gas company is entitled to an order of taking or condemnation under §

717f(h) when it satisfies three conditions: (1) a FERC Certificate authorizes the construction of the pipeline; (2) the use of a particular parcel of land is necessary to comply with the Certificate; and (3) the pipeline company has been unable to agree with the owner of the property on the amount of compensation to be paid.  See, e.g., Transwestern Pipeline Co. v. 17.19 Acres, 550 F.3d 770, 776 (9th Cir. 2008); Millennium Pipeline Company, LLC v. Certain Permanent and Temporary Easements, 777 F. Supp.2d 475, 479 (W.D.N.Y. 2011); Perryville Gas Storage LLC v. 40 Acres of Land, 2011 WL 4943318, at *2 (W.D. La., Oct. 17, 2011); Tennessee Gas Pipeline Co. v. Massachusetts Bay Transp. Auth., 2 F.Supp.2d 106 (D. Mass. 1998) (granting natural gas company's motion to confirm condemnation of easements when it satisfied the three conditions.)

Texas Eastern has established each of these conditions here.  Texas Eastern holds a FERC Certificate under which it may exercise the federal power of eminent domain. Second, FERC has approved the NJ-NY Pipeline Project, including its size, the location of easements and critical issues concerning the construction and operation of the Project and determined that the NJ-NY Pipeline Project is in the public interest.  As a result, the easement sought here is necessary to the Project.

Finally, Texas Eastern has been unable to acquire the easement from the Defendant Owner by contract or agreement.  The Natural Gas Act does not require Texas Eastern to enter into protracted negotiations with a property owner. Nor does Rule 71.1(h) or the NGA require Texas Eastern to exhaust negotiations before filing for condemnation.  Indeed, the NGA does not even require Texas Eastern to have negotiated in good faith. See, e.g., Maritimes & Northeast Pipeline, LLC v. Decoulos, 146 Fed. Appx. 495, 496 (1st Cir. 2005) (holding plain language of NGA imposes no obligation to negotiate in good faith); Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land, 210 F. Supp. 2d 1253, 1257 (D. Kan. 2002) (holding plain language of NGA renders no good faith requirement, only rejected offer to purchase); Guardian Pipeline, L.L.C. v.

529.42 Acres of Land, 210 F. Supp. 2d 971, 973 (N.D. Ill. 2002) (holding that neither the NGA nor Fed. R. Civ. P. 71.1 have a good faith requirement).

A district court within the Third Circuit has addressed this issue in Steckman Ridge GP, LLC v. Exclusive Natural Gas Storage Easement Beneath 11.078 Acres, 2008 U.S. Dist. LEXIS 71302 (W.D. Pa. Sept. 19, 2008), and agreed that there is no requirement of good faith negotiations.   In Steckman, the District Court cited and adopted the holding of the Federal District Court of Kansas in Kansas Pipeline Co. that the plain language of the NGA does not impose an obligation to negotiate in good faith on the part of the holder of a FERC certificate before acquiring land by exercise of eminent domain and the Court cannot require more than what the NGA expressly requires. Steckman, 2008 U.S. Dist. LEXIS 71302 at 41-42. But see, Transwestern Pipeline, supra, 550 F.3d at 776 (9th Cir. 2008)  (stating without explanation that pipeline company must show "good faith negotiations with the landowner.")

In any event, a pipeline company can show that it negotiated in good faith by demonstrating that it attempted to acquire the property rights from the landowner by agreement or contract prior to commencing condemnation proceedings. See, Millennium Pipeline Company, LLC v. Certain Permanent and Temporary Easements, 777 F.Supp. 2d at 483; Transcontinental Gas Pipeline Co. v. 118 Acres of Land, 745 F.Supp. 366, 369 (E.D.La. 1990). Texas Eastern has far exceeded its obligation to negotiate under whatever standard is applicable as shown by the record of communications and correspondence with the Defendant Owner. Texas Eastern seeks to acquire the 0.077 acre easement on a portion of Lot 7 from Coles Jersey Development Co., LLC to the extent they acquired any right or title to that parcel in the conveyance from Ogden Realty Co.  Since the settlement with Ogden Realty Co. included a grant of easement rights on Tract HUD-98.3, the $255,000.00 allocation of the previous settlement with Ogden Realty Co. is the negotiated consideration for the easement rights sought to be acquired by this action.  It is not the intention of Texas Eastern to litigate the merits of

Coles Jersey Development Co., LLC's claim to ownership of the portion of Block 6005, Lot 7 by virtue of a disputed boundary.  Rather, Texas Eastern seeks to acquire any easement rights that may not have been previously granted by New Jersey Transit Corporation in Tract HUD-98.3. The consideration for these rights was the subject of protracted negotiations between Texas Eastern and Ogden Realty Co. that resulted in a settlement.  There can be no question that Texas Eastern has negotiated in good faith.

### III. THE COURT SHOULD EXERCISE ITS EQUITABLE POWER TO PERMIT TEXAS EASTERN TO TAKE IMMEDIATE POSSESSION OF THE SUBJECT PROPERTY

Immediate possession is routinely granted by way of injunctions in condemnation actions under the NGA prior to resolving the issue of compensation. See, e.g., Guardian Pipeline v. 295.49 Acres of Land, 2008 U.S. Dist. LEXIS 35818, at 70-77 (E.D.Wis. 2008); Kern River Gas Transmission Co. v. Clark County, Nevada, 757 F.Supp. at 1115; Portland Natural Gas Transmission System v. 4.83 Acres of Land, 26 F.Supp.2d 332 (D.N.H. 1998).   Courts have allowed immediate possession through the exercise of their equitable powers. The courts hold that, upon satisfaction of the standard for injunctive relief, pipeline companies holding FERC certificates may be granted immediate possession of the property to be condemned prior to a determination of just compensation, thereby allowing the commencement of construction on the pipeline project. See, e.g.) Tennessee Gas Pipeline Co.  v. 0.018 Acres of Land in the Township of Vernon, 2010 WL 3883260 (U.S. Dist. N.J.); Northwest Pipeline Corp. v. The 20' by 1,430' Pipeline Right-of-Way, 197 F. Supp. 2d 1241, 1245 (E.D.Wash. 2002) ("Where there is no dispute about the validity of [the gas company's] actual right to the easement, denying authority to grant immediate possession would produce an absurd result.") Northern Border Pipeline Co. v. 64.111 Acres of Land, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000) (finding immediate possession to be proper when a condemnation order has been entered and preliminary injunction standards have been satisfied) Humphries v. Williams Natural Gas Co., 48 F. Supp. 1276, 1280 (D.

Kan. 1999) ("[I]t is apparently well settled that the district court does have the equitable power to grant immediate entry and possession [under the NGA].") Tennessee Gas Pipeline Co. v. New England Power, Inc., 6 F. Supp. 2d 102, 104 (D. Mass. 1998) ("[T]he district court does have the equitable power to grant immediate entry and possession where such relief is essential to the pipeline construction schedule."); Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres, More or Less in Monroe Township, supra, at 43 (W.D. Pa. 2008) (District Court for the Western District of Pennsylvania concluded that the pipeline company established equitable interest in the properties via the FERC certificate, and then used the injunction standard to determine that immediate possession was justified).

    In the Third Circuit, injunctive relief is available if the movant can demonstrate that it has met the standards for such relief: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Tennessee Gas Pipeline Co.  v. 0.018 Acres of Land in the Township of Vernon, 2010 WL 3883260, 3 (U.S. Dist. N.J.) citing, Kos Pharms, Inc. v. Andrex Corp., 369 F.3d 700, 708 (3d Cir. 2004). This well established standard of injunctive relief is available to Texas Eastern to establish immediate possession of the interests acquired by condemnation.  See, Northern Border, 125 F.Supp. 2d 299, 301 (D. Ill E.D. 2000) citing Roland Machinery Co. v. Dresser Indus., Inc., 749 F. 2d. 380, 386-88 (7th Cir. 1984); see also, Tennessee Gas, 6 F. Supp. 2d 102 (D. Mass. 1998); and Humphries v. Williams Natural Gas Co., 48 F.Supp. 2d 1276, 1280 (D. Kan. 1999).  Texas Eastern easily satisfies these requirements.

## A.    TEXAS EASTERN WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION DOES NOT ISSUE

    It is critical that Texas Eastern have immediate access to the Property.  The easement acquired by Order of Taking in the present action includes the right to operate and maintain the

pipeline. Now that pipeline installation and construction are complete, Texas Eastern must comply with maintenance requirements to ensure the safety and continued operation of the pipeline. A threat of irreparable harm exists if Texas Eastern cannot immediately enter the Property to maintain and monitor the right-of-way.

The Pipeline Safety Act ("PSA") (49 U.S.C. § 60101) provides the United States Department of Transportation ("DOT") with exclusive authority to establish national standards for the safe construction, operation, and maintenance of, among other things, interstate natural gas pipelines and their appurtenant facilities. Specifically, PSA § 60102(a)(1) provides that DOT shall prescribe "minimum pipeline safety standards for pipeline transportation and for pipeline facilities" and such standards "may apply to the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement and maintenance of pipeline facilities." 49 USC § 60102(a)(1)(B). The PSA requires regular inspection and testing of pipeline facilities. 49 USC § 60108. PSA regulations provide for the physical inspection of the pipeline right-of-way: "Each operator *shall*, at intervals not exceeding three weeks, but at least 26 times each calendar year, inspect the surface conditions on or adjacent to each pipeline right-of-way. Methods of inspection include walking, driving, flying or other appropriate means of traversing the right-of-way." 49 CFR § 195.412. Compliance with PSA safety regulations are expressly required by the FERC Certificate: "During operation, the new pipeline would be inspected by the applicants, in accordance with DOT standards, to observe right-of-way conditions to identify soil erosion that may expose the pipeline; unauthorized encroachment on the right-of-way, such as buildings and other substantial structures; and any other conditions that could present a safety hazard or require preventative maintenance or repairs." Gessner Cert., Ex. A, ¶87.

Once installation of the pipeline is complete, the routine inspection and maintenance of the pipeline becomes critical to operation. Gessner Cert., ¶22. The pipeline right-of-way is

inspected on a routine basis at intervals not to exceed three weeks, but at least twenty-six times each year. Id. Inspections are made in the right-of-way to observe pipeline conditions and to monitor the anti-corrosion protection of the pipeline. Id. Inspection of the right-of-way is critical to observe conditions that may pose a threat to the safe operation of the pipeline. Id. Access to the easements along the right-of-way is critical to remove potential hazards from the pipeline. The ability to immediately access the easement is critical to prevent unauthorized activity on or near the right-of-way. Id.

It is imperative that Texas Eastern be able to access to all properties along the route of the NJ-NY Project. If Texas Eastern's maintenance crews are not able to enter a property along the route of the NJ-NY Project, it will detrimentally affect Texas Eastern's ability to maintain the NJ-NY Project. In contrast to the foreseeable harm to Texas Eastern, access to the rights-of-way and easement areas on the Defendant Owner's property will pose minimal intrusion. Further, it is necessary to have a legal instrument granting the easement to Texas Eastern to record in the Union County Clerk's office to put the world on notice of Texas Eastern's easement and the restrictions from improving and encumbering the easement area. The irreparable harms cited herein more than support the equitable relief requested by Texas Eastern.

### B.   TEXAS EASTERN IS MORE THAN LIKELY TO SUCCEED IN THIS MATTER

There can be no question that Texas Eastern has satisfied the substantive requirements of the Natural Gas Act and the jurisdictional requirements of Fed. R. Civ. P. 71.1 to provide for an Order for Judgment to acquire the subject property: 1) Texas Eastern is the holder of a FERC Certificate; 2) the FERC Certificate identifies the subject property for acquisition for the proposed pipeline; and 3) Texas Eastern has been unable to acquire the subject property through negotiations. Based on the satisfaction of these requirements, Texas Eastern will prevail on the merits of the Verified Complaint. Success on the merits of the pending

application is "apparent". <u>Tennessee Gas Pipeline Company v. 0.561 Acres of Land</u>, 2012 WL

6131127, 2 (U.S. Dist. N.J.) <u>quoting</u> <u>0.018 Acres</u>, 2012 WL 3883260 at 2 ("the question is not

*whether* property rights will transfer to [the pipeline company] but *when*").   With no dispute as

to the validity of the condemnation of the subject property, Texas Eastern should also be

entitled to an injunction granting immediate access and possession of the subject property.

     As explained above, the NGA and the FERC Certificate cloak Texas Eastern with the

authority to take the easement rights and this Court's Order of Taking allowing Texas Eastern to

take the easements on the Property satisfies the likelihood of success requirement. <u>See</u>, <u>East</u>

<u>Tennessee Natural Gas. Co. v. Sage</u>, 361 F.3d at 829-830.

### C.    THE BALANCE OF EQUITIES FAVORS IMMEDIATE POSSESSION TO TEXAS EASTERN

     The balance of the equities in this matter favors immediate possession. In <u>Tennessee Gas</u>,

<u>supra</u>, a district court found that:

> because Tennessee [pipeline] has established that: (1) **** (2)
> interference with Tennessee's use of G.E. property at this crucial
> stage in the construction of the . . . project would irreparably harm
> Tennessee and the public by likely preventing completion of the
> project by the FERC-imposed deadline of December, 1998; and (3)
> granting the injunctive relief sought will impose no greater burden
> on C.T.L. than that resulting from the eventual entry of a judgment
> of taking, Tennessee's Motion for Injunctive Relief is granted to
> the extent than C.T.L. is enjoined from interfering with
> Tennessee's use and occupancy of the temporary easement and
> rights-of-way described in Count XII. [<u>Id.</u> at 106.]

     The balancing test set forth in <u>Tennessee Gas</u> favors immediate possession in this case.  If

immediate possession of the property is not awarded to Texas Eastern, Texas Eastern's ability to

deliver natural gas as required by the FERC Certificate will be compromised. On the other hand,

if immediate possession is granted, there will be no harm to the Defendant Owner since it will be

paid just compensation for the easement taken by Texas Eastern.

### D.    THE PUBLIC INTEREST REQUIRES IMMEDIATE POSSESSION OF THE EASEMENT ON THE PROPERTY

Finally, FERC has found that it is in the public interest that Texas Eastern be granted immediate possession of the easement located along the route of the NJ-NY Project. When completed, the Project will provide customers with access to diverse sources of natural gas supply to high-growth New Jersey and New York markets.  The NJ-NY Project will also eliminate a critical capacity constraint, enhance customer choice, and provide additional operational flexibility for Texas Eastern and natural gas suppliers.  Thus, Texas Eastern's request for immediate possession of the easements condemned should be granted.


## CONCLUSION

For the reasons set forth above, the Court should grant Texas Eastern's Motion for an Order of Taking and Motion for an Order for Preliminary Injunction.

Respectfully submitted,


Dated: January 9, 2014                    s/ Jeffrey D. Smith
                                          Jeffrey D. Smith, Esq.
                                          **DECOTIIS, FITZPATRICK & COLE, LLP**
                                          Glenpointe Centre West
                                          500 Frank W. Burr Blvd.
                                          Teaneck, New Jersey 07666
                                          Tel.: (201) 928-1100
                                          Attorneys for Plaintiff,
                                          Texas Eastern Transmission, LP