

**DECOTIIS**
DeCotiis, FitzPatrick & Cole, LLP

**OFFICE**
GLENPOINTE CENTRE WEST
500 FRANK W. BURR BLVD. SUITE 31
TEANECK, NEW JERSEY 07666
T: 201.928.1100   F: 201.928.0588
WWW.DECOTIISLAW.COM

**DIRECT**
JEFFREY D. SMITH, ESQ.
JSMITH@DECOTIISLAW.COM
201.907.5228

February 21, 2014

**VIA ECF and EMAIL**
Hon. Stanley R. Chesler, U.S.D.J.
United States District Court
District of New Jersey
M.L. King, Jr. Federal Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

    RE:    Texas Eastern Transmission, LP v. 0.077 Acres of Land,
            Coles Jersey Development Co. LLC, et al.
            <u>Civil Action No. 14-167-SRC-CLW</u>

Dear Judge Chesler:

      This office represents Texas Eastern Transmission, LP ("Texas Eastern") in the above-referenced matter. We respectfully submit this letter reply to the opposition of defendant Coles Jersey Development Co., LLC ("Coles Jersey") and in further support of Texas Eastern's application for an order of condemnation.

      The opposition filed by Coles Jersey lacks a factual premise or valid legal argument. In an effort to oppose the acquisition of an easement Coles Jersey attempts to create a fact in "dispute" as to the location of Texas Eastern's pipeline. Rather than submit a record of evidence for this Court's review and consideration, however, Coles Jersey relies solely on "information



and belief," citing a vague a recollection of a hearsay statement of an unidentified person. As the record evidence submitted by Texas Eastern demonstrates: "unequivocally, the pipeline was constructed in accordance with the FERC approved alignment of the permanent right-of-way depicted on LD-A-1077 on Tract HUD-98.2 (Block 6005, Lot 7) and Tract HUD-98.3 (Block 6005, Lot 13)." Supplemental Certification of Franklin S. Gessner, ¶4 ("Gessner Supp. Cert."). Without question as to the location of the 0.077 acre easement inside the FERC approved alignment, Texas Eastern is entitled to the Order of Taking.

Coles Jersey's suggestion that Block 6005, Lot 7 is not identified in the controlling Federal Energy Regulatory Commission "(FERC") approval misses the mark and misapprehends the FERC approval process. The Certificate of Public Convenience and Necessity ("Certificate") in Docket No. CP11-56-000 issued by FERC to Texas Eastern for the construction of the NJ-NY Project (the "Project") does not identify a list of properties necessary for the implementation of the Project. Gessner Supp. Cert., ¶2. Rather, the Project "alignment" or "route" is delineated by Texas Eastern's "Tract" identification on "Alignment Sheets" approved by FERC. Ibid. The alignment is measured in "stations". Ibid. The Tracts are specific to separate properties along the alignment. Ibid. The alignment sheet that includes Block 6005, Lots 7 and 13 is identified as "LD-A-1077". Alignment Sheet 1077 includes Tract HUD-98.2 and HUD-98.3. Ibid. Texas Eastern used municipal tax maps and tax assessment records to identify the owners of each Tract. Ibid. FERC granted Texas Eastern a Notice to Proceed for the installation of the pipeline as depicted on LD-A-1077 on June 29, 2012. Gessner Supp. Cert., Exs. B & D. Unequivocally, the pipeline was constructed in accordance with the FERC approved alignment of the permanent right-of-way depicted on LD-A-1077 on Tract HUD-98.2 (Block 6005, Lot 7) and Tract HUD-98.3 (Block 6005, Lot 13). Gessner, Supp. Cert. ¶4.

Coles Jersey represents to this Court that "upon information and belief, this Property is not within the corridor certificated by Plaintiff's FERC Certificate." Opposition Brief, p. 3. However, prior to filing this condemnation action, counsel for Coles Jersey were provided with an "as-built" survey of the pipeline location conclusively demonstrating the location of the pipeline and easement within the FERC certificated route. Gessner Supp. Cert., ¶5. Coles Jersey further mistakenly alleges that "Plaintiff mistakenly condemned the wrong entity, New Jersey Transit Corporation". Opposition Brief, p. 3. Texas Eastern was granted an easement from New Jersey Transit for Tract HUD-98.2 (Block 6005, Lot 7) by Grant of Easement Agreement dated October 5, 2012 recorded on October 12, 2012 in the Hudson County Register of Deeds in Book 8874, Page 698. Gessner Cert., Ex. C. It was only during construction months later that Texas Eastern agents identified a possible discrepancy between the property line of Block 6005, Lot 7 and Block 6005, Lot 13 depicted in the official municipal tax map and title documents. Gessner Supp., Cert. ¶6. For the first time, Texas Eastern agents opined that a portion of Block 6005, Lot 7, including a portion of Tract HUD-98.2, *may* be owned in fee by the adjacent owner of Block 6005, Lot 13, Ogden Realty Co., and not by New Jersey Transit Corporation as indicated on the official Tax Maps of Jersey City. Ibid.

It is not uncommon for there to be some discrepancy concerning property boundaries within the alignment of a pipeline project. Ibid. In such a case, rather than conclusively determine which party is the true owner of a parcel in dispute, Texas Eastern will seek easements from both parties claiming title. Ibid. Here, rather than have NJ Transit confirm the property boundary between Block 6005, Lot 7 and Lot 13, Texas Eastern seeks an easement on the 0.077 acre portion of Lot 7 from Coles Jersey Development Co., LLC to the extent they have color of title. Ibid. While Texas Eastern's agents raised the question of the boundary location, there has

been no resolution to this issue. Indeed, the correspondence attached to the Gans Affidavit expressly made "no representations as to the accuracy of the title opinions therein." Gans Cert., Ex. A. While Gans states that the title memorandum was "provided to Coles Jersey's title company to include Lot 7 in its coverage", there is no document relied upon by Coles Jersey that demonstrates its ownership of Block 6005, Lot 7. In fact, according to Jersey City tax records, Lot 7 is a 1.61 acre property owned by NJ Transit. Gessner Supp. Cert., Ex. A. While the Jersey City tax records were updated to reflect Coles Jersey's purchase of Block 6005, Lot 13, no such change in ownership was made as to Block 6005, Lot 7.

Coles Jersey has offered nothing in the record to demonstrate the portion of Lot 7 they claim to own. Arguably, if Coles Jersey had undertaken a diligent search of the title records prior to their purchase of the subject property from Ogden Realty, they would have been aware of the easement from New Jersey Transit Corp. as to Tract HUD-98.2 (Block 6005, Lot 7) because it was recorded on October 12, 2012. Gessner Cert., Ex. C. There is no question that the easement sought by Texas Eastern is within the FERC certificated alignment and Coles Jersey either through the negotiations with Ogden Realty (in which Daniel Gans participated) or through their own diligent search of the title record, should have been aware of it.

The legal challenge to Texas Eastern's taking raised in Coles Jersey's opposition also fails. Coles Jersey argues that Texas Eastern failed to comply with the jurisdictional requirements of a condemnation action in accordance with substantive New Jersey law requiring a particular form of "bona fide," good faith negotiations. Coles Jersey makes this argument under state law even though: 1) the Natural Gas Act ("NGA") explicitly confers jurisdiction on this Court for the very claims set forth in this suit; 2) Federal Rule of Civil Procedure 71.1 describes in detail the procedure to be followed when seeking condemnation of real property in

Federal Court; and 3) extensive and well-developed federal law regarding pipeline condemnations pre-empt the condemnation procedures that vary state by state.

In order to make the argument that state law and procedure should apply here, as opposed to Rule 71.1, Coles Jersey ignores District, Circuit and Supreme Court law that establishes conclusively that Rule 71.1 supersedes the one clause in the Natural Gas Act that is implicitly the basis of Coles Jersey's argument in this case. Federal law and procedure applies to this matter brought before this Court pursuant to the specific federal jurisdictional grant under the NGA. To apply New Jersey's standard for good faith negotiations as Coles Jersey suggests would ignore that Rule 71.1, which was adopted in 1951, supersedes Section 717f(h) of the NGA, which was enacted in 1938. See East Tenn. Natural Gas Co. v. Sage, 361 F. 3d 808, 822 (4th Cir. 2004) ("Courts agree that this state procedure requirement in the NGA has been superseded by Rule 71.1"); National Fuel Gas Supply Corp. v. 138 Acres, 84 F. Supp. 2d 405, 411-15 (W.D.N.Y. 2000) (finding that "Rule 71.1 supersedes the practice and procedure clause of section 717f(h) and that it is federal, not state, procedural law that governs the present condemnation proceeding").[1] "FRCP 71.1 was promulgated to override a number of confusing federal eminent domain practice and procedure provisions such as that of NGA Section 717f(h), and to provide a unified and coherent set of rules and procedures to be used in deciding federal eminent domain actions." Southern Natural Gas Co., 197 F.3d at 1375.

---

[1] See also, Northern Border Pipeline Co. v. 64.111 Acres of Land, 344 F.3d 693, 694 (7th Cir. 2003); Southern Natural Gas Co. v. 2.0 Acres of Land, 197 F.3d 1368, 1375 (11th Cir. 1999); Transwestern Pipeline Co. v. 9.32 Acres, 544 F. Supp. 2d 939 (D. Ariz. 2008) ("[P]ractice and procedure in federal court cases brought pursuant to the NGA's delegation of eminent domain authority is governed by the federal rule, not state practice and procedure."); Guardian Pipeline, LLC v. 295.5 Acres of Land, 2008 WL 1751358 (E.D. Wis. April 11, 2008) (holding that Fed. R. Civ. P. 71.1 applies in cases filed under the NGA); Kansas Pipeline Co. v. A 200 by 250 foot Piece of Land, 210 F. Supp. 2d 1253 (D. Kan. 2002) (finding that Rule 71.1 governs the practices and procedures of federal eminent domain actions).

The Supreme Court has similarly ruled that Fed. R. Civ. P. 71.1 nullifies analogous conformity clauses of other federal statutes that permit condemnation. Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 4 fn.2 (1984) (noting that condemnation proceedings brought pursuant to section 257 of Title 40 of the U.S. Code are no longer controlled by the state-law conformity clause because "[t]he adoption in 1951 of FRCP 71.1 capped an effort to establish a uniform set of proceedings governing all federal condemnation actions"); United States v. 93.970 Acres of Land, 360 U.S. 328, 333 fn.7 (1959) (holding that "federal law was wholly applicable" to federal condemnation proceedings because the state-law conformity clause found in section 171 of Title 50 of the U.S. Code "was clearly repealed by Rule 71.1").

From New Jersey law, Coles Jersey argues that "bona fide" negotiations should apply in this venue. Federal law, however, not State law, governs the present condemnation action. There is no authority cited by Coles Jersey that would support the position that Texas Eastern has not complied with the pre-litigation requirements of F.R.C.P. 71.1. See, e.g., Maritimes & Northeast Pipeline, LLC v. Decoulos, 146 Fed. Appx. 495, 496 (1st Cir. 2005) (holding that plain language of NGA imposes no obligation to negotiate in good faith); Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land, 210 F. Supp. 2d 1253, 1257 (D. Kan. 2002) (same; plain language of NGA requires only rejected offer to purchase); Guardian Pipeline, 210 F. Supp. at 973 (N.D. Ill. 2002) (holding that neither the NGA nor Fed. R. Civ. P. 71.1 impose a good faith requirement); Steckman Ridge GP, LLC v. Exclusive Natural Gas Storage Easement Beneath 11.078 Acres, 2008 U.S. Dist. LEXIS 71302 (W.D. Pa. Sept. 19, 2008) (plain language of the NGA does not impose an obligation to negotiate in good faith on the part of the holder of a FERC certificate). Even if there were an obligation to negotiate in good faith, such an obligation could be satisfied by a showing that Texas Eastern made reasonable attempts to acquire the

property rights from the landowner by agreement or contract prior to commencing condemnation proceedings. See, Millennium Pipeline Co. v. Certain Permanent and Temporary Easements, 777 F. Supp. 2d at 483; Transcontinental Gas Pipeline Co. v. 118 Acres of Land, 745 F. Supp. 366, 369 (E.D. La. 1990).

Coles Jersey seems to argue that Texas Eastern failed to negotiate at all. This ignores the in-person meeting at Texas Eastern's Jersey City office on November 19, 2013 attended by counsel for Coles Jersey at which the specific topic of compensation was discussed. Gessner Supp. Cert., ¶ 7. It was at this meeting that Ogden Realty was paid $1,134,900.00 under the terms of the settlement in the Consent Order representing a portion of the settlement proceeds allocated for the easements acquired on Block 6005, Lot 13. Ibid. The amount of $255,000.00 was identified as the compensation for the easement acquired on the 0.077 acre portion of Tract HUD-98.2 (Block 6005, Lot 7). The $255,000.00 compensation was an amount allocated between principals for Ogden Realty and Hoboken Brownstone Company. The $255,000.00 compensation for the 0.077 acre easement on a portion of Tract HUD-98.2 (Block 6005, Lot 7) offered in the pending condemnation represents Texas Eastern's good faith commitment to abide by the previously agreed upon settlement with Ogden Realty Co. and Hoboken Brownstone Company. Coles Jersey also ignores their own counter-offer of $2,500,000.00 for the easement rights sought in this condemnation. Gessner Cert., ¶8. The record of negotiations consists of an in-person meeting and counter-offer. An attempt to acquire the easement voluntarily occurred at the November 19, 2013 meeting and culminated months later with the rejection of a ludicrous counter-offer. While no offer letter was sent to Coles Jersey to initiate negotiations, there can be no dispute that actual negotiations occurred between Coles Jersey and Texas Eastern. Moreover, Coles Jersey's allegation also conveniently ignores Texas Eastern's settlement with Ogden and

Hoboken Brownstone that was intended to include the additional easement rights for the 0.077 acre easement on a portion of Tract HUD-98.2 (Block 6005, Lot 7) that Texas Eastern seeks to acquire now.

As to the equitable relief sought by Texas Eastern, a natural gas company may be granted possession pending a trial for just compensation under the preliminary injunction procedure of Rule 65 of the Federal Rules of Civil Procedure. Texas Eastern is entitled to an Order of Taking because: (1) it holds a FERC Certificate authorizing the construction of the Project, (2) the easements on the Properties are necessary to construct the Project, and (3) Texas Eastern has been unable to purchase the easements from Coles Jersey. See, e.g., Transwestern Pipeline Co. v. 17.19 Acres, 550 F.3d 770, 776 (9th Cir. 2008). For these reasons, as set forth here and more fully in Texas Eastern's moving brief, Texas Eastern's Motion for Condemnation should be granted, and the Order of Taking and Order of Preliminary Injunction should be entered by this Court.

Respectfully submitted,

DeCOTIIS, FITZPATRICK & COLE, LLP

s/Jeffrey D. Smith
Jeffrey D. Smith

cc:   All counsel or parties via ECF

1650401_1.docx