## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TEXAS EASTERN TRANSMISSION, LP, a limited partnership of the State of Delaware<br><br>                Plaintiff,<br>v.<br><br>0.077 Acres Of Land, More or Less, In The City of Jersey City, Hudson County, New Jersey; COLES JERSEY DEVELOPMENT CO., LLC; OGDEN REALTY CO.; JANE AND JOHN DOES 1 through 50 (fictitious name defendants); and ABC BUSINESS ENTITIES 1 through 50 (fictitious name defendants),<br><br>                Defendants. | Civil Action No. 14-167-SRC-CLW |

---

## BRIEF IN SUPPORT OF PLAINTIFF, TEXAS EASTERN TRANSMISSION, LP'S MOTION FOR SUMMARY JUDGMENT

---

DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP
Glenpointe Centre West
Teaneck, New Jersey 07666
Tel.: (201) 928-1100
Attorneys for Plaintiff,
Texas Eastern Transmission, LP

On the Brief
     Michael J. Ash, Esq.

Of Counsel
     Jeffrey D. Smith, Esq.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ iii

PRELIMINARY STATEMENT .................................................................................................... 1

PROCEDURAL HISTORY............................................................................................................ 3

STATEMENT OF FACTS ............................................................................................................. 4

    A.   OVERVIEW OF THE NJ-NY PROJECT .............................................................. 4

    B.   PROJECT CONSTRUCTION ON BLOCK 6005, JERSEY CITY .................................. 5

    C.   THE CONVEYANCE OF BLOCK 6005 FROM OGDEN REALTY CO. TO
        HOBOKEN BROWNSTONE COMPANY .......................................................... 7

    D.   NEGOTIATIONS FOR ADDITIONAL PERMANENT EASEMENT RIGHTS
        ON BLOCK 6005, LOT 7 .............................................................................. 8

    E.   HOBOKEN BROWNSTONE COMPANY TERMINATES CONTRACT
        OF SALE WITH OGDEN REALTY CO............................................................. 10

    G.   CONVEYANCE OF BLOCK 6005, LOTS 7 & 13 FROM OGDEN REALTY
        TO COLES JERSEY DEVELOPMENT CO. LLC................................................. 12

    H.   NEGOTIATIONS WITH COLES JERSEY DEVELOPMENT CO., LLC
        FOR GRANT OF EASEMENT........................................................................ 14

LEGAL ARGUMENT.................................................................................................................. 15

TEXAS EASTERN IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
COLES JERSEY DEVELOPMENT CO. LLC HAS WAIVED ANY RIGHT TO
COMPENSATION FOR THE EASEMENT RIGHTS ACQUIRED IN THIS
CONDEMNATION ACTION.................................................................................... 15

    A.   THE SUMMARY JUDGMENT STANDARD.................................................... 15

    B.   COLES JERSEY DEVELOPMENT CO. LLC HAS WAIVED ANY RIGHT
        TO COMPENSATION FOR THE EASEMENT RIGHTS NEGOTIATED IN
        THE PRIOR CONDEMNATION ACTION ........................................................ 17

    C.   COLES JERSEY DEVELOPMENT CO. LLC MUST BE ESTOPPED FROM
        SEEKING COMPENSATION FOR THE EASEMENT RIGHTS ACQUIRED
        IN THE PRIOR CONDEMNATION ACTION. .................................................. 24

i

CONCLUSION ................................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aetna Ins. Co. v. Kennedy to Use of Bogash,
301 U.S. 389 (1937) ........................................................................ 17

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ........................................................................ 16

Buffum v. Chase National Bank,
192 F.2d 58 (7th Cir.1951) ............................................................. 17

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .................................................................. 15, 16

ConocoPhillips v. United States,
73 Fed. Cl. 46 (2006) ..................................................................... 18

D. H. Overmyer Co. Inc., of Ohio v. Frick Co.,
405 U.S. 174 (1972) ....................................................................... 18

Dickerson v. Colgrove,
100 U.S. 578 (1879) ....................................................................... 25

Fay v. Noia,
372 U.S. 391 (1963) ....................................................................... 17

Fredericks v. Commissioner,
126 F.3d 433 (3d Cir.1997) ........................................................... 25

Green v. United States,
355 U.S. 184 (1957) .................................................................. 17, 18

Hawknet, Ltd. v. Overseas Shipping Agencies,
590 F.3d 87 (2d Cir. 2009) .................................................. 18, 20, 21

Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.,
467 U.S. 51 (1984) .................................................................... 24, 25

Johnson v. Zerbst,
304 U.S. 458 (1938) .................................................................. 17, 18

Peterson v. S.S. Wahcondah,
331 F.2d 44 (5th Cir.1964) ............................................................. 17

Pitts v. American Sec. Life,
  931 F.2d 351 (5th Cir. 1991) ............................................................................... 24

Sambo's Restaurants, Inc. v. City of Ann Arbor,
  663 F.2d 686 (6th Cir. 1981) ......................................................................... 17, 18

Thomason v. Aetna Life Ins. Co.,
  9 F.3d 645 (7th Cir. 1993) ................................................................................... 24

U.S. v. Castillo,
  179 F. 3d 321 (5th Cir.1999) ............................................................................... 17

United States v. Asmar,
  827 F.2d 907 (3d Cir. 1987)................................................................................. 25

US v. Zubia-Torres,
  550 F.3d 1202 (10th Cir. 2008) .......................................................................... 17

**Statutes**

15 U.S.C. § 717a(6) .................................................................................................. 4

15 U.S.C., §717.......................................................................................................... 3

**Rules**

Federal Rule of Civil Procedure 56(a) ...................................................................... 15

Plaintiff Texas Eastern Transmission, LP ("Texas Eastern") respectfully submits this brief in support of its Motion for Summary Judgment.

## PRELIMINARY STATEMENT

This matter arises from the resolution of a prior condemnation action related to the NJ-NY Expansion Project. Texas Eastern entered into a settlement agreement with Ogden Realty Co. in Civil Action No. 12-3412 (SRC)(CLW) in which Texas Eastern paid $3,500,000.00 in exchange for temporary and permanent easements on the larger parcel now owned by defendant Coles Jersey Development Co., LLC ("Coles Jersey"), including the 0.077 acre sliver at issue here. Texas Eastern's acquisition of permanent easement rights from Ogden Realty Co. on the 0.077 acre tract here was an essential term of the settlement. The prior settlement was negotiated in good faith among Texas Eastern, Coles Jersey's grantor Ogden Realty Co. and its agent Hoboken Brownstone Company, the contract purchaser of the subject property. Before the settlement monies were paid to Ogden, and prior to the grant to Texas Eastern of additional permanent easement rights on the .077 acre tract, Ogden Realty Co. conveyed the property to Coles Jersey, an entity affiliated with Hoboken Brownstone Company. On the representations of Ogden Realty Co., Texas Eastern signed a consent order and paid the settlement amount of $3,500,000.00.

Despite the settlement with Ogden, and although conceding that Texas Eastern had already acquired easement rights for the larger parcel for which it paid Ogden, Coles Jersey's grantor, defendant Coles Jersey refused to grant the additional permanent easement rights on the 0.077 acre portion of the property, asserting the dubious claim that Texas Eastern's pipeline was a trespass on that sliver of land. The present condemnation action ensued to perfect the

1

acquisition of the additional permanent easement rights on Lot 7 for which Texas Eastern had already paid Ogden Realty, Coles Jersey's grantor.

Now that the parties have engaged in discovery, the full picture has emerged as to the negotiation of settlement terms among Texas Eastern, Ogden Realty and Hoboken Brownstone and the conveyance of the subject property three (3) weeks later to Coles Jersey. Daniel Gans was the agent of Hoboken Brownstone Company and principal of Coles Jersey in the settlement negotiations in connection with the purchase of the subject property from Ogden Realty. At the closing between Ogden Realty Co. and Coles Jersey Development Co, LLC, Gans signed a waiver and release of any right to compensation for the Ogden condemnation settlement, inclusive of the additional permanent easement rights on the 0.077 acre portion of Block 6005, Lot 7 at issue here. Coles Jersey has no legal or equitable claim to compensation for the *same* 0.077 acre permanent easement, as it has waived and released any right to compensation. Coles Jersey's claim here seeks a windfall to the tune of *an additional $3,000,000.00 for the same permanent easement rights Texas Eastern acquired from Ogden Realty,* the rights to which Coles Jersey previously waived. In the alternative, Coles Jersey is estopped from seeking additional compensation for the grant of easements rights already resolved and paid for in the settlement of the prior, Ogden condemnation action.

**PROCEDURAL HISTORY**

Texas Eastern received approval from the Federal Energy Regulatory Commission ("FERC") to build a natural gas pipeline extending from Linden, New Jersey to downtown Manhattan.  Pursuant to the Natural Gas Act, 15 U.S.C., §717 et seq., (the "Natural Gas Act", or the "NGA"), FERC issued a Certificate of Public Convenience and Necessity (the "FERC Certificate") on May 21, 2012, authorizing Texas Eastern to construct what is referred to as the New Jersey – New York Expansion Project ("NJ-NY Project", or the "Project").

Texas Eastern acquired temporary and permanent easements from the fee owner of Tract HUD-98.3 (Block 6005, Lot 13), Ogden Realty Co. by Order of Taking entered June 28, 2012 in Docket No. 12-3412-SRC (the "Prior Ogden Action").   On June 29, 2012, Texas Eastern deposited $2,110,100.00 as just compensation for the acquisition of temporary and permanent easements on Tract HUD-98.3 (Block 6005, Lot 13) from Ogden Realty Co.  Id.   On July 3, 2013, Block 6005, Lot 13 and Lot 7 was conveyed by Ogden Realty Co. to Coles Jersey Development Co., LLC, together with other assembled properties.   On August 23, 2013, a Consent Order was entered as to the compensation for the easement acquisitions in the Prior Action in the amount of $3,500,000.00. Ogden Realty Co. has been paid the full compensation in settlement of the Prior Action.

On January 9, 2014, Texas Eastern filed a Verified Complaint and Order to Show Cause to acquire permanent easement rights on a 0.077 acre portion of Block 6005, Lot 7 owned by Coles Jersey Decelopment Co., LLC and formerly owned by Ogden Realty Co.  Also on January 9, 2014, Texas Eastern moved for an Order of Taking and Immediate Possession of the Easement.  On February 10, 2014, Coles Jersey filed an Answer and Affirmative Defenses challenging the taking by Texas Eastern.  On February 20, 2014, Defendant Ogden Realty Co.

filed a non-contesting answer to the taking and a cross-claim against Defendant Coles Jersey seeking compensation for the permanent easement rights for Block 6005, Lot 7. The return date on Order to Show Cause was held on March 6, 2014. The Court denied Texas Eastern's application for an Order of Taking and for Immediate Possession of the easement on Block 6005, Lot 7. On September 9, 2014, a Consent Order of Taking was filed by Texas Eastern and Coles Jersey. The parties have engaged in fact discovery as to the ownership and grant of easement rights on Block 6005, Lot 7. The parties have also engaged in expert discovery on the valuation of the easement rights for Block 6005, Lot 7.

## STATEMENT OF FACTS

The facts stated herein are taken from the Statement of Undisputed Facts and the Certification of Franklin S. Gessner, Supplemental Certification of Franklin S. Gessner, Certification of Peter H. Wegener, Esq., and Certification of Michael J. Ash, Esq., CRE.

### A. OVERVIEW OF THE NJ-NY PROJECT

Texas Eastern is an interstate natural gas company as that term is defined by the Natural Gas Act, 15 U.S.C. § 717a(6), having corporate headquarters at 5400 Westheimer Court, Houston, Texas, and formerly having local offices at 150 Warren Street, 2nd Floor, Jersey City, New Jersey 07302. Statement of Undisputed Material Facts, ¶1. The NJ-NY Project involved construction of approximately 15.0 miles of new 30-inch diameter and 4.8 miles of 42-inch diameter replacement pipeline and related facilities that transport natural gas in interstate commerce. Statement of Undisputed Material Facts, ¶2. The pipeline portion of the Project begins in Linden, New Jersey, crosses under the Arthur Kill to Staten Island near the Goethals Bridge and then follows a route through Staten Island. The pipeline crosses under the Kill Van Kull to Bayonne, New Jersey and then extends into Jersey City from where it crosses under the

Hudson River and terminates on the West Side of lower Manhattan near Route 9A and Gansevoort Street. Id.  The FERC Certificate issued on May 21, 2012 authorizes Texas Eastern to construct, operate, and maintain the Project. Gessner Cert., Ex. A.  FERC has found that the Project is in the public interest.  Id.  The Certificate expressly and unequivocally states that the Project "must [be] construct[ed] and make available for service . . . by November 1, 2013." Statement of Undisputed Material Facts, ¶3.

### B.  PROJECT CONSTRUCTION ON BLOCK 6005, JERSEY CITY

Construction of the Project began on June 29, 2012 and was completed by the November 1, 2013 in-service date.   Statement of Undisputed Material Facts, ¶3.  In the northern portion of Jersey City, the pipeline was installed by the horizontal directional drill ("HDD") method. Statement of Undisputed Material Facts, ¶4.  HDD installation requires a subsurface crossing of multiple properties with a single entry and exit point at each end of the spread.  Id.  The HDD construction crew is located at each end of the drill to work in a sequence from the entry point to direct the drill underneath the property in accordance with the FERC approved alignment and continues along contiguous property emerging at a pre-determined exit point.  Id.  All HDD construction activities are completed underground with the exception of a surface tracking wire that is temporarily installed over the pipeline alignment to support the guidance of the drill. Id.

A segment of the alignment for the pipeline in north Jersey City and the entry point for the "18th Street HDD" are depicted on FERC approved alignment sheet LD-A-1077.  Statement of Undisputed Material Facts, ¶5.  The pipeline was constructed in accordance with the FERC approved alignment of the permanent right-of-way depicted on LD-A-1077.  Id.  The alignment along LD-A-1077 required the acquisition of permanent and temporary easements on property identified as Tract HUD-98.2 (Block 6005, Lot 7) and Tract HUD-98.3 (Block 6005, Lot 13). Id.

Based on available title information and published municipal tax maps, the fee owner of Tract HUD-98.2 (Block 6005, Lot 7) was New Jersey Transit Corporation.  Statement of Undisputed Material Facts, ¶6.  Texas Eastern negotiated with New Jersey Transit Corporation and was granted an easement for Tract HUD-98.2 (Block 6005, Lot 7) by Grant of Easement Agreement dated October 5, 2012 recorded on October 12, 2012 in the Hudson County Register of Deeds in Book 8874, Page 698.  Id.  Based on available title information and published tax maps, the fee owner of Tract HUD-98.3 (Block 6005, Lot 13) was Ogden Realty Co.  Statement of Undisputed Material Facts, ¶7.  Texas Eastern acquired temporary and permanent easements from Ogden Realty Co. by Order of Taking entered June 28, 2012 in Docket No. 12-3412-SRC. Id.  On June 29, 2012, Texas Eastern deposited $2,110,100.00 as just compensation for the acquisition of temporary and permanent easements on Tract HUD-98.3 (Block 6005, Lot 13).  Id.

Upon completion of the pipeline installation in March 2013, post-construction fieldwork, surveying and a review of title documents by Texas Eastern agents, resulted in the identification of a possible discrepancy between the property line of Block 6005, Lot 7 and Block 6005, Lot 13 depicted in the official municipal tax map and title documents.  Statement of Undisputed Material Facts, ¶8.  Texas Eastern agents opined that a portion of Block 6005, Lot 7, including a portion of easement Tract HUD-98.2, may be owned in fee by the adjacent owner of Block 6005, Lot 13, Ogden Realty Co., and not by New Jersey Transit Corporation as indicated on the official Tax Maps of Jersey City.  Id.  As a result, the question as to the property boundary between Block 6005, Lot 7 and Lot 13 was communicated to counsel for Ogden Realty Co. in the course of negotiations for the acquisition of easements on Tract HUD-98.3 (Block 6005, Lot 13).  Id. An offer of $3,000,000.00 was made to Ogden Realty Co. for the easements on Tract HUD-98.3

(Block 6005, Lot 13) together with a grant of easement on Tract HUD-98.2 (Block 6005, Lot 7) based on any right or title Ogden Realty Co. had to a portion of Lot 7.

### C. THE CONVEYANCE OF BLOCK 6005 FROM OGDEN REALTY CO. TO HOBOKEN BROWNSTONE COMPANY

On April 12, 2013, Ogden Realty Co. entered into a Purchase and Sale Agreement with Hoboken Brownstone Company, a "Registered Trade Name of West Bank Realty Inc.", for approximately seven (7) acres in Jersey City, inclusive of Block 6005, Lot 13 (formerly known as Block 367, Lot A.2), for consideration of $22,000,000.00. Statement of Undisputed Material Facts, ¶9.

Of the purchase price of $22,000,000.00, the amount of $10,000.00 was paid upon execution of the contract, an additional deposit of $2,190,000 was made upon expiration of the due diligence period, and the balance of $19,800,000 was to be paid at a closing scheduled for June 28, 2013. Statement of Undisputed Material Facts, ¶10. The conveyance by Ogden Realty Co. to Hoboken Brownstone Company was made specifically subject to the condemnation by Texas Eastern Transmission, LP, of the permanent and temporary easements pursuant to an order of the United States District Court for the District of New Jersey dated June 28, 2012, in Civil Action Number 12-3412. Statement of Undisputed Material Facts, ¶11. On April 19, 2013, the purchase and sale agreement dated April 12, 2013 between Ogden Realty Co. and The Hoboken Brownstone Company was assigned to "CH Acquisitions 2, LLC, an affiliate of Crescent Heights." Statement of Undisputed Material Facts, ¶12.

**D. NEGOTIATIONS FOR ADDITIONAL PERMANENT EASEMENT RIGHTS ON BLOCK 6005, LOT 7**

During the course of negotiations with Ogden Realty Co., Texas Eastern land agents learned of the pending sale of Block 6005, Lot 13 to Hoboken Brownstone Co. Statement of Undisputed Material Facts, ¶13. In a meeting on June 4, 2013, Texas Eastern agents offered $3,000,000.00 to Hoboken Brownstone Co. as future owners of Tract HUD-98.3 (Block 6005, Lot 13). This offer was memorialized in correspondence to Daniel Gans dated June 5, 2013. Id. The June 5, 2013 letter to Daniel Gans included a survey referred to as "LPlat_HUD98.3 dated 3/18/13". Statement of Undisputed Material Facts, ¶14. The survey depicted the revised boundary of Block 6005, Lot 1,3 including a portion of Lot 7 in relation to the existing permanent and temporary easement areas. Furthermore, the survey depicted the approximate location of pre-existing electrical lines in the portion of Lot 7. Id.

On June 13, 2013, representatives of Ogden Realty Co. and Hoboken Brownstone Co. met with Texas Eastern at Texas Eastern's offices to negotiate a settlement of the pending condemnation of Tract HUD-98.3 (Block 6005, Lot 13) and a grant of easement rights on Tract HUD-98.2 (Block 6005, Lot 7), to the extent Ogden Realty Co. had rights or color of title to that portion of Block 6005, Lot 7. Statement of Undisputed Material Facts, ¶15. Daniel Gans participated in the settlement conference on behalf of Hoboken Brownstone, and CH Acquisitions 2, LLC, the contract purchaser of Block 6005, Lots 13 and the portion of Lot 7. Id. Peter Wegener, Esq., participated in the settlement conference as counsel for Ogden Realty, the contract seller of Block 6005, Lots 13 and the portion of Lot 7. The parties, including Texas Eastern, Ogden Realty, and Hoboken Brownstone, agreed to a settlement of $3,500,000.00 for the acquisition of Tract HUD-98.3 (Block 6005, Lot 13) and a grant of additional permanent easement rights on Tract HUD-98.2 (Block 6005, Lot 7). Id.

During the negotiations, Texas Eastern made clear that acquisition of easement rights on the portion of Block 6005, Lot 7 at issue in this action was essential to the settlement amongst Ogden Realty, Hoboken Brownstone and Texas Eastern.  As a result, Daniel Gans of Hoboken Brownstone Company understood that the grant of additional permanent easement rights on the portion of Block 6005, Lot 7 was a material term of the settlement between Ogden Realty Co. and Texas Eastern.  Statement of Undisputed Material Facts, ¶16.  Peter H. Wegener, Esq., counsel for Ogden Realty Co., similarly understood that the grant of additional permanent easement rights on a portion of Block 6005, Lot 7 was a material term of the settlement between Ogden Realty Co. and Texas Eastern.  Statement of Undisputed Material Facts, ¶17.

After the June 13, 2013 settlement meeting, Ogden Realty, Co. and Hoboken Brownstone negotiated an allocation and distribution between them of the settlement proceeds of $3,500,000.00.  Statement of Undisputed Material Facts, ¶18.  Ogden Realty and Hoboken Brownstone negotiated an allocation of the settlement across three separate categories of compensation: 1) the "corner", new additional permanent easement; 2) permanent easement rights; and 3) temporary workspace.  Id.  As used in the allocation calculation, the term "corner" referred to the portion of Lot 7 on Block 6005 for which Texas Eastern required an additional permanent easement area, in case the easement for the same area earlier acquired from New Jersey Transit, was actually for land owned by Ogden.  Id.  Counsel for Ogden Realty, Co. also understood the "additional permanent easement area" to mean the new permanent easement on the portion of Block 6005, Lot 7 at issue in this case.  Id.  The amount of "$255,056" was allocated between Ogden Realty and Hoboken Brownstone as compensation for the additional permanent easement rights for the "corner" portion of the settlement.  Id.  The amount of "$255,000" was described in the settlement allocation, prepared by Daniel Gans, as "allocation

9

for additiona (sic) permanent taking".  <u>Id</u>. Correspondence on June 24, 2013 between Paul Hennessy and counsel for Ogden Realty, Co. confirms that Ogden Realty and Hoboken Brownstone negotiated compensation of $255,000.00 to be paid to Hoboken Brownstone for the additional permanent easement rights on the portion of Block 6005, Lot 7 at issue here.  <u>Id</u>.

### E.   <u>HOBOKEN BROWNSTONE COMPANY TERMINATES CONTRACT OF SALE WITH OGDEN REALTY CO.</u>

CH Acquisitions 2, LLC did not purchase the property from Ogden Realty Co. by June 28, 2013 as called for in the contract of sale.  Statement of Undisputed Material Facts, ¶19. Bruce Menin, the principal of CH Acquisitions 2, LLC refused to close title with Ogden Realty Co. over expressed concerns of various issues including: 1) the payment of a broker's commission; 2) the Spectra Energy Condemnation Settlement; and 3) a question of title over the portion of Block 6005, Lot 7.  <u>Id</u>.  By memorandum dated June 29, 2013 to CH Acquisitions principal Bruce Menin, Dan Gans and George Vallone provided details as to the status of the issues in controversy that prevented CH Acquisitions 2, LLC from closing title on the Ogden Realty Co. property.  Statement of Undisputed Material Facts, ¶20.   As to the Spectra Energy Condemnation Settlement, the memo confirmed that on June 5, 2013, Gans received a call from Spectra asking for assistance negotiating an additional easement area.  <u>Id</u>..  Gans further acknowledged in the memo that an allocation of the proposed settlement amount was negotiated between Ogden Realty and Hoboken Brownstone Company with a breakdown between compensation for the temporary and permanent easements.  <u>Id</u>.  Finally, Gans confirmed the final settlement amount of $3,500,000.00 negotiated by Ogden Realty Co., Hoboken Brownstone Company and Texas Eastern at the June 13, 2013 settlement conference.  <u>Id</u>.

The memorandum to Menin from Gans and Vallone also addressed the title of Block 6005, Lot 7.  Statement of Undisputed Material Facts, ¶21.  As to the status of title on the portion

of Block 6005, Lot 7, the memorandum described the title issue as follows: "Spectra Energy was so convinced that this was a mistake and that the property was in fact owned by Walsh Ogden that they paid an additional $1.4 million to Walsh Ogden to gain access to this narrow strip of land so that they did not have to bend the pipe and go around it."  Id. The memorandum continued "[n]otwithstanding any of that, we tried to convince you yesterday that even if we lost that 3300 ft$^2$ piece it would cost just $255,000 of the $1.79 million credit off the purchase price we had gotten from the Spectra settlement and just 15 units of density on a 1000 unit project." Id.

### F.  NEGOTIATIONS BETWEEN HOBOKEN BROWNSTONE AND NEW PARTNER FOR REVISED TERMS WITH OGDEN REALTY CO.

Faced with potential litigation over the termination of the Contract of Sale with Ogden, Dan Gans and George Vallone sought to reinstate the Contract of Sale with Ogden Realty. Statement of Undisputed Material Facts, ¶22.  On June 28, 2013, Ogden informed Gans and Vallone that the terms of the Contract of Sale were terminated and that in order to close on the Property, Gans and Vallone would have to find a cash buyer and forfeit proceeds from the Spectra settlement.  Id.  Bruce Menin and his partners with CH Acquisitions refused to close on the Property with Ogden Realty's new terms.  Id.

Bruce Menin discussed the purchase from Ogden Realty with his former classmate, Bill Ackman, at a barbeque in the Hamptons on or about June 29, 2013. Statement of Undisputed Material Facts, ¶23.  Bill Ackman was a former partner of Hoboken Brownstone who was consulted by Bruce Menin as a personal reference for Dan Gans and George Vallone.  Id.  When Bruce Menin terminated the transaction with Ogden Realty, Dan Gans and George Vallone sought to have Bill Ackman as a new partner for the acquisition of the Property. Id.  Between June 29, 2018 and July 2, 2013, Dan Gans and George Vallone persuaded Bill Ackman to

11

partner with them for the acquisition of the Property. Bill Ackman eventually agreed to partner with Dan Gans and George Vallone to complete the acquisition of the Property. Id. The terms that Bill Ackman agreed to on or about July 1, 2013 were as follows: 1) the purchase price for the Property was $22,000,000; 2) there would be no contract with Ogden Realty; 3) Ogden would receive all the settlement proceeds from Spectra and there would be no allocation of the settlement including permanent easement rights for a portion of Block 6005, Lot 7; and 4) a closing to occur on or before July 3, 2013. Statement of Undisputed Material Facts, ¶24.

### G.  CONVEYANCE OF BLOCK 6005, LOTS 7 & 13 FROM OGDEN REALTY TO COLES JERSEY DEVELOPMENT CO. LLC

On or about July 3, 2013, after the settlement with Texas Eastern, Ogden Realty Co. conveyed Block 6005, Lot 13, together with additional properties to defendant Coles Jersey Development Co., LLC. Statement of Undisputed Material Facts, ¶25.    The conveyance included Block 6005, Lot 7. Id. The grantee of Block 6005, Lot 7 was described on the Deed as "Coles Jersey Development Co., LLC, a New Jersey Limited Liability Company whose post office box is c/o Hoboken Brownstone Company, 161 14th Street, Hoboken, New Jersey 07030". Id. Dan Gans and George Vallone formed the entity Coles Jersey Development Co., LLC on July 1, 2013. Id. At the closing on July 3, 2013, Gans and Vallone conveyed all interest in Coles Jersey Development Co. LLC to an entity controlled by Bill Ackman. Id.

At the July 3, 2013 closing, Daniel Gans, of Hoboken Brownstone Co. signed a release binding "Hoboken Brownstone Company, its heirs, successors, predecessor and assigns" providing all compensation to Ogden Realty "in respect of the condemnation award, or settlement in lieu of condemnation award, arising out of the permanent and temporary condemnation by Texas Eastern Transmission, LP., of certain real property located in the City of Jersey City, New Jersey, as specifically referenced in the matter of Texas Eastern Transmission,

L.P. v. 1.73 Acres of Land, More or Less, et. al. Docket No. 12-3412-SRC, **including but not limited to Block 6005, lots 7 and 13 on the Tax Map of the City of Jersey City**." (emphasis added) Statement of Undisputed Material Facts, ¶26. At the time of this conveyance, representatives of Ogden and Coles Jersey expressed an understanding that the taking by Texas Eastern in the Prior Ogden Action bearing Civil Action No. 12-3412(SRC), included easements on both lots 13 and 7 of Block 6005, as depicted on the Tax Map of Jersey City. Statement of Undisputed Material Facts, ¶27.

At the time of the closing, Daniel Gans, acting on behalf of Coles Jersey Development Co., LLC and The Hoboken Brownstone Co., agreed to waive all claims to any proceeds from the condemnation of easements that included lots 13 and 7 in Block 6005 in the Ogden matter- the Prior Action bearing Civil Action No. 12-3412(SRC). Statement of Undisputed Material Facts, ¶28. Dan Gans approved the draft of the closing documents on behalf of Coles Jersey, specifically the release documents. Id. "Hoboken Brownstone" is not a legal entity, but rather a "trade name" used by Dan Gans and George Vallone in the course of their real estate development business. Statement of Undisputed Material Facts, ¶29.

By correspondence dated July 3, 2013, counsel for Ogden Realty Co., advised Texas Eastern that all proceeds from the settlement for the acquisition of easements on Block 6005, Lots 7 and 13 should be paid to Ogden Realty Co. and that Hoboken Brownstone Co. released all rights to the proceeds of the settlement. Statement of Undisputed Material Facts, ¶30. On or about July 30, 2013, Texas Eastern and Ogden Realty filed a Consent Order for Final Judgment Fixing Compensation in the Prior Ogden Action which was entered by the Court on August 6, 2013. Statement of Undisputed Material Facts, ¶31. The total payment under the Consent Order was $3,500,000.00. Id.

## H. NEGOTIATIONS WITH COLES JERSEY DEVELOPMENT CO., LLC FOR GRANT OF EASEMENT

Although Texas Eastern acquired an easement for Tract HUD-98.2 (Block 6005, Lot 7) by grant from New Jersey Transit Corporation, and pursuant to the settlement with Ogden Realty, Texas Eastern also sought an easement from Coles Jersey Development Co, LLC for any right or title to the portion of Block 6005, Lot 7 by virtue of the disputed property line with Block 6005, Lot 13.  Statement of Undisputed Material Facts, ¶32.  Consistent with the terms of the settlement between the parties, by which Ogden granted easements and Hoboken Brownstone and Coles Jersey released all rights to the condemnation related payment, Texas Eastern sought an instrument granting easement rights for Tract HUD-98.3 (Block 6005, Lot 7) from Coles Jersey Development Co., LLC.  Id.  Counsel for Texas Eastern communicated with Daniel Gans, representative of Coles Jersey Development Co., LLC, to obtain a grant of easement for Tract HUD-98.3 (Block 6005, Lot 7).  Id.

Various surveys prepared before the conveyance of the Property to Coles Jersey depicted the location of the Texas Eastern pipelines constructed on the Property with a notation as to the "unrecorded permanent easement" for the benefit of Texas Eastern.  Statement of Undisputed Material Facts, ¶33.  By correspondence dated October 24, 2013, counsel for Coles Jersey Development Co., LLC wrote to counsel for Texas Eastern and raised concerns over the pipeline's route across Tract HUD-98.3 (Block 6005, Lot 7) and suggested a meeting to discuss the status of the settlement with Ogden Realty Co.  Statement of Undisputed Material Facts, ¶34.

On or about November 19, 2013, Mr. Gessner met with counsel for Coles Jersey Development Co., LLC and Ogden Realty Co. in an attempt to resolve this matter amicably. Statement of Undisputed Material Facts, ¶35.  Of the additional $1,389,900.00 owed to Ogden Realty Co. under the terms of the settlement in the Consent Order, $1,134,900.00- representing

14

the portion of the settlement proceeds allocated by Ogden and Hoboken Brownstone for the easements acquired on Block 6005, Lot 13 was paid to Ogden Realty Co.  Id.  The balance of $255,000.00 representing a portion of the settlement proceeds allocated for the easements acquired on Block 6005, Lot 7 was initially held back but eventually paid to Ogden.  Id.  The compensation for the easement rights on Block 6005, Lot 7 in the amount of $255,000.00 was identified as the compensation for the "additional permanent taking" for the 0.077 acre parcel at issue in this case, as indicated in correspondence from Ogden Realty Co.'s counsel to Texas Eastern's counsel dated October 24, 2013.  Statement of Undisputed Material Facts, ¶36.

## LEGAL ARGUMENT

### TEXAS EASTERN IS ENTITLED TO SUMMARY JUDGMENT BECAUSE COLES JERSEY DEVELOPMENT CO. LLC HAS WAIVED ANY RIGHT TO COMPENSATION FOR THE EASEMENT RIGHTS ACQUIRED IN THIS CONDEMNATION ACTION.

Coles Jersey is barred from seeking compensation for the 0.077 acre permanent easement based on well-established principles of 1) waiver; and 2) estoppel.

### A. **THE SUMMARY JUDGMENT STANDARD**.

With no material facts in dispute, Texas Eastern is entitled to summary judgment as a matter of law.  Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party has the burden of establishing that there exists no genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."

15

Id. at 325.  In order to survive a motion for summary judgment, the non-moving party must then present more than the "mere existence of a scintilla of evidence." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  The non-moving party "may not rest upon the mere allegations…of his pleading but…must set forth specific facts showing that there is a genuine issue for trial." Id. at 248.

The record of undisputed facts demonstate that Texas Eastern negotiated in good faith to resolve the Prior Ogden Action for two material terms: 1) payment of compensation in the amount of $3,500,000.00; and 2) a grant of additional permanent easement rights on a portion of Block 6005, Lot 7.  All parties to the present action were involved in the negotiations of the settlement of the Prior Ogden Action and acknowledge the material terms of the settlement.  While Texas Eastern has paid the compensation of $3,500,000.00 in full to Ogden Realty, Texas Eastern has not received the benefit of its bargain to obtain additional permanent easement rights forcing the continued procesuction of this condemnation litigation of an additional grant of 0.077 acres of permanent easement rights.  In fact, Coles Jersey now seeks a windfall of $3,000,000.00 for the same 0.077 acres of permanent easement its principal and agent agreed would be included in the settlement.  The clear record of correspondence, settlement documents, and documents executed in furtherance of the conveyance between Ogden Realty Co. and Coles Jersey support Texas Eastern's request for summary judgment.   The documentary record is also corroborated by the sworn testimony of Daniel Gans, a principal of Coles Jersey who attended the June 2013 settlement conference, participated in negotiations, and was the sole agent of Coles Jersey to attend the closing with Ogden Realty and executed closing documents on its behalf.   The undisputed facts demonstrate that Coles Jersey expressly waived any claim to compensation for the settlement of the Prior Action which included the additional 0.077 acre permanent easement.

16

Moreover, Coles Jersey must be estopped from seeking additional compensation for an easement that existed before the entity was formed and acquired title to the disputed portion of Block 6005, Lot 7.

### B. COLES JERSEY DEVELOPMENT CO. LLC HAS WAIVED ANY RIGHT TO COMPENSATION FOR THE EASEMENT RIGHTS NEGOTIATED IN THE PRIOR CONDEMNATION ACTION

Coles Jersey expressly waived any compensation for a permanent easement on the same 0.077 acre portion of Block 6005, Lot 7 at issue in this matter for which Texas Eastern paid Ogden, Coles Jersey's grantor, in a release signed by Coles Jersey's agent at closing. Waiver is the intentional or voluntary relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U.S. 458, 464 (1938); Fay v. Noia, 372 U.S. 391, 439 (1963); Peterson v. S.S. Wahcondah, 331 F.2d 44, 48 (5th Cir.1964); Sambo's Restaurants, Inc. v. City of Ann Arbor, 663 F.2d 686, 693 (6th Cir. 1981) ("waiver, at the least, is the relinquishment of a known right"). Waiver "connotes some kind of voluntary knowing relinquishment of a right . . . " Green v. United States, 355 U.S. 184, 191 (1957), "which, except for such waiver, would have been enjoyed." Buffum v. Chase National Bank, 192 F.2d 58, 60-61 (7th Cir.1951), cert. denied, 342 U.S. 944. Appellate courts typically find waiver in cases where a party "has invited the error that it now seeks to challenge, or where a party attempts to reassert an argument that it previously raised and abandoned below." US v. Zubia-Torres, 550 F.3d 1202, 1207 (10th Cir. 2008). Waiver can be a "consequence of a party's inaction." U.S. v. Castillo, 179 F. 3d 321, 326 (5th Cir.1999) (in context of barring consideration of an issue that could have been raised in earlier litigation); Aetna Ins. Co. v. Kennedy to Use of Bogash, 301 U.S. 389, 393 (1937) (in context of waiver of right to a jury trial, courts indulge every reasonable presumption against waiver or, as

here, deliberate and express intention).

"The determination of whether there has been an intelligent waiver ... must depend, in each case, upon the particular facts and circumstances surrounding the case." Johnson v. Zerbst, supra, 304 U.S. at 458.  In civil matters, a valid waiver must be "be voluntary, knowing, and intelligently made, or 'an intentional relinquishment or abandonment of a known right or privilege.'" D. H. Overmyer Co. Inc., of Ohio v. Frick Co., 405 U.S. 174, 185–86 (1972) (citations omitted).  The validity of a waiver depends upon the totality of the circumstances. Id. at 204.  The presence or absence of consideration is a factor that can be weighed in determining whether a waiver was knowing and voluntary. Id. at 187-87; see also Sambo's Restaurants, Inc. v. City of Ann Arbor, supra, 663 F.2d at 707 (finding where waiver was voluntary and knowing, and there is no adhesion contract or unequal bargaining power, the presence or absence of consideration is irrelevant in deciding whether waiver applied); Finkin, The Limits of Majority in Collective Bargaining, 64 Minn.L.Rev. 183, 252 (1980) (the presence of equal bargaining power may also indicate that a waiver was voluntary); see also ConocoPhillips v. United States, 73 Fed. Cl. 46, 56 (2006), aff'd, 501 F.3d 1374 (Fed. Cir. 2007) (delay in time of challenging legality constituted waiver as "intentional relinquishment or abandonment of a known right or privilege"). The doctrine of waiver "demands conscientiousness, not clairvoyance, from parties." Hawknet, Ltd. v. Overseas Shipping Agencies, 590 F.3d 87, 92 (2d Cir. 2009).

Coles Jersey's waiver of any claim to compensation paid to Ogden for the easement at issue in this case is clear and unequivocal.  As Texas Eastern completed construction and installation of the NJ-NY Project in Jersey City, a question arose as to the ownership of a piece of property on Block 6005 on the boundary line of Lots 7 and 13.  While originally thought to be the property of NJ Transit, on which Texas Eastern previously negotiated and secured an

18

easement, it became apparent that ownership may be ascribed to the contiguous property owner, Ogden Realty.   Texas Eastern approached Ogden Realty in March 2013 to discuss the discrepancy in ownership.  At the time, Ogden Realty was subject to a taking for permanent and temporary easements in the pending Prior Ogden Action.  On April 8, 2013, a survey was presented to Ogden Realty's counsel demonstrating the field-change that occurred during construction to slightly shift the pipeline alignment due to the discovery of two (2) pre-existing high voltage electric lines installed in the portion of Block 6005, Lot 7.  Wegener Cert., ¶3. Texas Eastern was advised that Ogden Realty was under contract with Hoboken Brownstone to convey Block 6005.  Texas Eastern viewed the possible need for additional easement rights and the change in ownership as an opportunity to settle the Prior Ogden Action.

Texas Eastern next contacted Daniel Gans, the representative of the contract purchaser, Hoboken Brownstone, to discuss the 0.077 acre portion of Lot 7 on which additional easement rights were required and the possibility of a settlement of the Prior Ogden Action.  In a meeting on June 4, 2013, Texas Eastern agents offered $3,000,000.00 to Hoboken Brownstone Co. as future owners of Tract HUD-98.3 to settle the Prior Action.  This offer was memorialized in correspondence to Daniel Gans dated June 5, 2013 and included the survey that depicted the revised boundary of Block 6005, Lot 13, including a portion of Lot 7 in relation to the existing permanent and temporary easement areas.   Texas Eastern, Ogden Realty, and Hoboken Brownstone all agreed to meet to discuss a settlement of the Prior Ogden Action.

On June 13, 2013, representatives of Ogden Realty Co. and Hoboken Brownstone Co. and Texas Eastern met at Texas Eastern's offices to negotiate the settlement of the pending condemnation of Tract HUD-98.3 (Block 6005, Lot 13) and a grant of easement rights on Tract HUD-98.2 (Block 6005, Lot 7), to the extent Ogden Realty Co. had rights or color of title to a

portion of Block 6005, Lot 7.  Statement of Undisputed Material Facts, ¶15.  Daniel Gans participated in the settlement conference on behalf of Hoboken Brownstone, and CH Acquisitions 2, LLC, the contract purchaser of Block 6005, Lots 13 and a portion of Lot 7.  Id. Peter Wegener, Esq., participated in the settlement conference as counsel for Ogden Realty, the contract seller of Block 6005, Lots 13 and a portion of Lot 7.

The parties, including Texas Eastern, Ogden Realty, and Hoboken Brownstone, reached a settlement of $3,500,000.00 for the acquisition of Tract HUD-98.3 (Block 6005, Lot 13) and a grant of additional permanent easement rights on Tract HUD-98.2 (Block 6005, Lot 7).  Id. Daniel Gans of Hoboken Brownstone Company fully understood the obvious-  that the grant of additional permanent easement rights on a portion of Block 6005, Lot 7 was a material term of the settlement between Ogden Realty Co. and Texas Eastern.  Statement of Undisputed Material Facts, ¶16.  Peter Wegener, Esq., counsel for Ogden Realty Co., also understood that the grant of additional permanent easement rights on a portion of Block 6005, Lot 7 was a material term of the settlement between Ogden Realty Co. and Texas Eastern.  Statement of Undisputed Material Facts, ¶17.

After the settlement was negotiated, Ogden Realty and Hoboken Brownstone engaged in their own negotiation as to the allocation between them of the settlement proceeds to be paid by Texas Eastern.  The parties negotiated an allocation of the settlement across three separate categories of compensation: 1) the "corner" new additional permanent easement (the portion of Block 6005, Lot 7); 2) permanent easement rights; and 3) temporary workspace.  Statement of Undisputed Material Facts, ¶18.  As used in the allocation calculation, the term "corner" referred to the portion of Lot 7, on Block 6005 for which Texas Eastern required an additional permanent easement area.  Id.  The amount of "$255,000" was described in the settlement allocation,

prepared by Daniel Gans, as "allocation for additiona (sic) permanent taking". <u>Id</u>. Correspondence on June 24, 2013 between Paul Hennessy and counsel for Ogden Realty, Co. confirms that Ogden Realty and Hoboken Brownstone negotiated compensation of $255,000.00 to be paid to Hoboken Brownstone for the additional permanent easement rights on a portion of Block 6005, Lot 7. <u>Id</u>.

Therefore, CH Acquisitions 2, LLC refused to close with Ogden Relaty Co., citing various reasons to terminate the Purchase and Sale Agreement. Hoboken Brownstone was, however, able to find a new partner, Bill Ackman, to purchase the Ogden Realty property. The terms of the new acquisition expressly required the new purchaser to forfeit participation in the settlement proceeds from the Prior Action. On July 3, 2013, Ogden Realty Co. conveyed Block 6005, Lot 13, together with additional properties to Coles Jersey Development Co., LLC. Statement of Undisputed Material Facts, ¶25.    The conveyance included the portion of Block 6005, Lot 7. <u>Id</u>. The grantee of the portion of Block 6005, Lot 7 was described on the Deed as "Coles Jersey Development Co., LLC, a New Jersey Limited Liability Company whose post office box is c/o Hoboken Brownstone Company, 161 14th Street, Hoboken, New Jersey 07030". <u>Id</u>.    Dan Gans and George Vallone had formed the entity Coles Jersey Development Co., LLC on July 1, 2013. <u>Id</u>. At the closing on July 3, 2013, Gans and Vallone conveyed all interest in Coles Jersey Development Co. LLC to an entity controlled by Bill Ackman. <u>Id</u>.

At the July 3, 2013 closing, Daniel Gans, of Hoboken Brownstone Co. signed a release binding "Hoboken Brownstone Company, its heirs, successors, predecessor and assigns" providing all compensation to Ogden Realty "in respect of the condemnation award, or settlement in lieu of condemnation award, arising out of the permanent and temporary condemnation by Texas Eastern Transmission, LP, of certain real property located in the City of

Jersey City, New Jersey, as specifically referenced in the matter of <u>Texas Eastern Transmission,</u> <u>L.P. v. 1.73 Acres of Land, More or Less, et. al</u>. Civil Action No. 12-3412(SRC), including but not limited to Block 6005, lots 7 and 13 on the Tax Map of the City of Jersey City" (the "Prior Ogden Action"). Statement of Undisputed Material Facts, ¶26. At the time of this conveyance, representatives of Ogden and Coles Jersey expressed an understanding that the taking by Texas Eastern in the Prior Ogden Action bearing Civil Action No. 12-3412 (SRC) included easements on both lots 13 and 7 of Block 6005, as depicted on the Tax Map of Jersey City. Statement of Undisputed Material Facts, ¶27.

At the time of the closing, Daniel Gans, acting on behalf of Coles Jersey Development Co., LLC and The Hoboken Brownstone Co., agreed to waive all claims to any proceeds from the condemnation of easements that included lots 13 and 7 in Block 6005 in the action bearing Civil Action No. 12-3412-SRC. Statement of Undisputed Material Facts, ¶28. Dan Gans approved the draft of the closing documents on behalf of Coles Jersey, specifically, including, the release documents. <u>Id</u>. "Hoboken Brownstone" is not a legal entity, but rather a "trade name" used by Dan Gans and George Vallone in the course of their real estate development business. Statement of Undisputed Material Facts, ¶29. After the closing, Ogden Realty's counsel advised Texas Eastern that Hoboken Brownstone released any claim for compensation as part of the negotiated settlement and provided a revised form of Consent Order that removed Hoboken Brownstone as a party to the settlement.

Now that discovery has been completed, it is clear from the document record, correspondence and testimony that Coles Jersey waived any right to compensation for the easements acquired in the Prior Ogden Action, together with additional permanent easement rights on a portion of Block 6005, Lot 7. The Release signed by Daniel Gans as Chief Executive Officer of The Hoboken Brownstone Company is dispositve of this issue. The Release signed by

Gans "is intended to be construed to release any and all such claims and rights in respect of such condemnation award, or settlement in lieu of condemnation award, arising on or before the date of execution of this document to the fullest extent permitted by law."  Ash Cert., Ex. H.  The terms of the Release include the permanent easement rights sought by Texas Eastern for the 0.077 acre portion of Lot 7 that all parties understood to be a material term of the settlement of the Prior Ogden Action.

By signing the Release, Gans, on behalf of Hoboken Brownstone and Coles Jersey, voluntarily and knowingly relinquished the right to compensation for the permanent easement on the 0.077 acre portion of Block 6005, Lot 7 at issue in this case.  The undisputed record makes clear that:

- Through the June 4, 2013 meeting and June 5, 2013 letter, Gans was fully aware of Texas Eastern's desire for additional permanent easement rights on the 0.077 acre portion of Block 6005, Lot 7;

- By participating in the June 13, 2013 settlement conference Gans understood that the grant of additional permanent easement rights on the 0.077 acre portion of Block 6005, Lot 7 was a material term of the settlement with Ogden;

- Gans negotiated an allocation of the settlement proceeds with Ogden Realty that specifically referenced the grant of additional permanent easement rights on the 0.077 acre portion of Block 6005, Lot 7 as the "corner piece" having an imputed value of $255,000;

- When CH Acquisitions, LLC terminated the April 2013 Purchase and Sale Agreement, Gans entered into a new agreement with Ogden Realty for the purchase of Block 6005 in which the buyer expressly forfeited participation in the settlement proceeds from the Prior Ogden Action;

- Gans approved the form of closing documents between Coles Jersey and Ogden Realty including the Release prepared by Ogden Realty's counsel; and

- Gans signed the Release at the closing with Ogden Realty as the actual agent of Coles Jersey and only authorized signatory of Coles Jersey at the July 3, 2013 closing, releasing and waiving any right to settlement proceeds inclusive of the permanent easement on Block 6005, Lot 7.

The waiver of additional compensation for the same easement is clear and unequivocal. Texas Eastern must be given the full benefit of its bargain negotiated in good faith without further proceeding in this matter against the same parties.

### C. COLES JERSEY DEVELOPMENT CO. LLC MUST BE ESTOPPED FROM SEEKING COMPENSATION FOR THE EASEMENT RIGHTS ACQUIRED IN THE PRIOR CONDEMNATION ACTION.

Having expressly waived any right to compensation for the additional 0.077 acre permanent easement, Coles Jersey must be estopped from seeking compensation of any amount, much less its claimed "damages" of $3,000,000.00 in this matter.  Waiver and estoppel are distinct, although related, concepts and the same facts that give rise to a claim of waiver may also support a claim of estoppel. Thomason v. Aetna Life Ins. Co., 9 F.3d 645 (7th Cir. 1993). Waiver describes the act, or the consequences of the act, of one party only; in contrast with estoppel, which is found when the conduct of one party has induced the other party to rely on the conduct of the first to the detriment of the second. See Pitts v. American Sec. Life, 931 F.2d 351, 357 (5th Cir. 1991).

Estoppel is "an equitable doctrine invoked to avoid injustice in particular cases." Heckler v. Cmty. Health Servs. of Crawford Cty., Inc., 467 U.S. 51, 59 (1984). The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done,

shall not subject such person to loss or injury by disappointing the expectations upon which he

acted. <u>Dickerson v. Colgrove</u>, 100 U.S. 578, 580 (1879). "While a hallmark of the doctrine is its

flexible application, certain principles are tolerably clear":

> 'If one person [1] makes a definite misrepresentation of
> fact to another person [2] having reason to believe that the other
> will rely upon it and the other in reasonable reliance upon it does
> an act ... the first person is not entitled . . . to regain property or its
> value that the other acquired by the act, [3] if the other in reliance
> upon the misrepresentation and before discovery of the truth has so
> changed his position that it would be unjust to deprive him of that
> which he thus acquired.'

> Thus, the party claiming the estoppel must have relied on
> its adversary's conduct "in such a manner as to change his position
> for the worse," and that reliance must have been reasonable in that
> the party claiming the estoppel did not know nor should it have
> known that its adversary's conduct was misleading.

> [<u>Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.</u>, <u>supra</u>, 467
> U.S. at 59 (quoting Restatement (Second) of Torts § 894(1)
> (1979).]

Therefore, to succeed on a traditional claim of estoppels, the litigant must prove (1) a

misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment.

<u>United States v. Asmar</u>, 827 F.2d 907, 912 (3d Cir. 1987); see also <u>Fredericks v. Commissioner</u>,

126 F.3d 433, 438 (3d Cir.1997) (adopting within the Third Circuit the majority view which

recognizes estoppel as an equitable defense against government claims and imposes an additional

burden in which the defense is asserted against a governmental claim requiring claimants to

"establish some affirmative misconduct on the part of the government officials").

As outlined in <u>Point II</u>, Gans intelligently and expressly waived any right for Coles

Jersey, as the purchaser of Block 6005, Lot 7, to receive additional compensation for the 0.077

acre additional permanent easement area.  A release was signed that was "intended to be

construed to release any and all such claims and rights in respect of such condemnation award, or

settlement in lieu of condemnation award, arising on or before the date of execution of this document to the fullest extent permited by law."  Ash Cert., Ex. H.  Texas Eastern was not a party to the negotiations between Ogden Realty and Hoboken Brownstone.  Texas Eastern was certainly not privy to the discussions and negotiations between Hoboken Brownstone and CH Acquisitions 2, LLC or in the formation of Coles Jersey.  Texas Eastern did not participate in the closing between Ogden Realty Co. and Coles Jersey.  Texas Eastern did, however, enter into a Consent Order for Final Judgment Fixing Compensation resolving the Prior Ogden Action, based on the terms negotiated on June 13, 2013, by inducement of Gans, on behalf of Hoboken Brownstone and Coles Jersey and Ogden Realty's counsel.  In a July 3, 2013 letter, sent via email the same day as the closing with Coles Jersey (upon Gans signing the Release), Ogden's counsel alerted Texas Eastern:

> "[a]s a result of further negotiations with Hoboken Brownstone Co., that entity is no longer involved in any transactions regarding the subject property.  I have requested that they provide a Release waiving any interest in the proceeds of the within condemnation action.  Obviously, the form of Consent Order for Final Judgment fixing compensation previously submitted to me required revision."

Wegener Cert., Ex. C.  The Release referred to by Wegener is the Release signed at the closing by Daniel Gans.  Wegener Cert., Ex. D.  Only after Texas Eastern was notified that Hoboken Brownstone released and expressly waived compensation for the additional permanent easement rights on the 0.077 acre portion of Block 6005, Lot 7 did Texas Eastern entered into the Consent Order revised by counsel for Ogden to remove Hoboken Brownstone as a direct party to the settlement.  Having no window into the conveyance from Ogden Realty to Coles Jersey, Texas Eastern reasonably relied on the representations of Gans, on behalf of Hoboken Brownstone and Coles Jersey and Ogden Realty's counsel, that the settlement negotiated on June

13, 2013 could be consummated.  Texas Eastern paid the negotiated settlement compensation of $3,500,000.00 but was denied the additional permanent easement rights on the 0.077 acre portion of Block 6005, Lot 7 it expected in return.  To Texas Eastern's detriment, Coles Jersey, which benefitted from the settlement and expressly waived any interest in the proceeds, now seeks to double-dip by demanding an additional $3,000,000.00 for the same easement rights.  Based on the undisputed record, Coles Jersey must be estopped from asserting this claim for additional compensation.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Court should grant Texas Eastern's Motion for Summary Judgment finding that Coles Jersey acquired Block 6005, Lot 7, subject to the permanent easement rights of Texas Eastern without further requirement for compensation.

Respectfully submitted,

Dated: September 21, 2018

s/ Jeffrey D. Smith
Jeffrey D. Smith, Esq.
**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, New Jersey 07666
Tel.: (201) 928-1100
*Attorneys for Texas Eatern Transmission, LP*