UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666
(201) 928-1100
Email: mash@decotiislaw.com
*Attorneys for Plaintiff Texas Eastern Transmission, LP*

| | |
|---|---|
| TEXAS EASTERN TRANSMISSION, LP, a limited partnership of the State of Delaware<br>Plaintiff,<br>v.<br><br>0.077 Acres Of Land, More or Less, In The City of Jersey City, Hudson County, New Jersey; COLES JERSEY DEVELOPMENT CO., LLC; OGDEN REALTY CO.; JANE AND JOHN DOES 1 through 50 (fictitious name defendants); and ABC BUSINESS ENTITIES 1 through 50 (fictitious name defendants),<br><br>Defendants. | Civil Action No. 14-167-SRC-CLW<br><br><br>**STATEMENT OF UNDISPUTED MATERIAL FACTS** |

Plaintiff, Texas Eastern Transmission, LP ("Texas Eastern") sets forth the following material facts not in dispute herein in accordance with L.Civ.R. 56.1. The facts set forth herein are taken from the Verified Complaint and certifications made in support of the Verified Complaint; pleadings filed by parties in this action; discovery produced by parties to this action; transcripts of depositions taken in the action; Certification of Franklin S. Gessner (Document 1-6); Affidavit of Daniel Gans (Document 8-2); Supplemental Certification of Franklin S. Gessner (Document 14-1); Certification of Peter H. Wegener, Esq.; and Certification of Michael J. Ash, Esq., CRE.

1

The parties in this matter have not set forth any facts to date which would rebut the undisputed facts set forth herein.

## I.    PROJECT BACKGROUND

1. Texas Eastern is an interstate natural gas company as that term is defined by the Natural Gas Act, 15 U.S.C. § 717a(6), has corporate headquarters at 5400 Westheimer Court, Houston, Texas, and formerly having local offices at 150 Warren Street, 2nd Floor, Jersey City, New Jersey 07302.  Certification of Franklin S. Gessner ("Gessner Cert."), ¶2.

2. The NJ-NY Project involved construction of approximately 15.0 miles of new 30-inch diameter and 4.8 miles of 42-inch diameter replacement pipeline and related facilities that transport natural gas in interstate commerce. Gessner Cert., ¶3.  The pipeline portion of the Project begins in Linden, New Jersey, crosses under the Arthur Kill to Staten Island near the Goethals Bridge and then follows a route through Staten Island.  Ibid.  The pipeline crosses under the Kill Van Kull to Bayonne, New Jersey and then extends into Jersey City from where it crosses under the Hudson River and terminates on the West Side of lower Manhattan near Route 9A and Gansevoort Street. Ibid.

3. On May 21, 2012, the Federal Energy Regulatory Commission ("FERC") issued a Certificate of Public Convenience and Necessity ("Certificate") in Docket No. CP11-56-000 to Texas Eastern and Algonquin for the construction of the NJ-NY Project. Gessner Cert., ¶5.  The Certificate requires that the NJ-NY Project be completed and available for service by November 1, 2013.  Gessner Cert., ¶6.  Construction of the Project began on June 29, 2012 and was completed by the November 1, 2013 in-service date. Ibid.

## II.     PROJECT CONSTRUCTION ON BLOCK 6005, JERSEY CITY

4. Construction of the Project included pipeline installation in the vicinity of Coles Street and 18th Street in Jersey City, near Block 6005. In the northern portion of Jersey City, the pipeline was installed by the horizontal directional drill ("HDD") method. Gessner Cert., ¶7. HDD installation requires a subsurface crossing of multiple properties with a single entry and exit point at each end of the spread. Ibid. The HDD construction crew is located at each end of the drill to work in a sequence from the entry point to direct the drill underneath the property in accordance with the FERC approved alignment and continues along contiguous property emerging at a pre-determined exit point. Ibid. All HDD construction activities are completed underground with the exception of a surface tracking wire that is temporarily installed over the pipeline alignment to support the guidance of the drill. Ibid.

5. A segment of the alignment for the pipeline in north Jersey City and the entry point for the "18th Street HDD" are depicted on FERC approved alignment sheet LD-A-1077. The pipeline was constructed in accordance with the FERC approved alignment of the permanent right-of-way depicted on LD-A-1077. Gessner Cert., ¶8. The pipeline was constructed in accordance with the FERC approved alignment of the permanent right-of-way depicted on LD-A-1077 on Tract HUD-98.2 (Block 6005, Lot 7) and Tract HUD-98.3 (Block 6005, Lot 13). Supplemental Certification of Franklin S. Gessner ("Gessner Supp. Cert."), ¶4.

6. Based on available title information and published municipal tax maps in 2012, the fee owner of Tract HUD-98.2 (Block 6005, Lot 7) was New Jersey Transit Corporation. Gessner Cert., ¶9. Texas Eastern negotiated with New Jersey Transit Corporation and was granted an easement for Tract HUD-98.2 (Block 6005, Lot 7) by Grant of Easement Agreement dated October 5, 2012 recorded on October 12, 2012 in the Hudson County Register of Deeds in Book

3

8874, Page 698.  Ibid., Ex. C.  The easement for Tract HUD-98.2 (Block 6005, Lot 7) is depicted on Exhibit A-2 to the Grant of Easement Agreement.  Ibid.

7. Based on available title information and published tax maps in 2012, the fee owner of Tract HUD-98.3 (Block 6005, Lot 13) was Ogden Realty Co.  Gessner Cert., ¶10.  After initial negotiations with Ogden Realty Co. concluded, Texas Eastern acquired temporary and permanent easements by Order of Taking entered June 28, 2012 in Docket No. 12-3412-SRC.  Ibid., Ex. D.  On June 29, 2012, Texas Eastern deposited $2,110,100.00 as just compensation for the acquisition of temporary and permanent easements on Tract HUD-98.3 (Block 6005, Lot 13)(the "Prior Action").  Ibid.

8. Upon completion of the pipeline installation in March 2013, post construction fieldwork, surveying and a review of title documents by Texas Eastern agents identified a possible discrepancy between the property line of Block 6005, Lot 7 and Block 6005, Lot 13 depicted in the official municipal tax map and title documents.  Gessner Cert., ¶11; Gans Cert. ¶¶4-6.  Texas Eastern agents opined that a portion of Block 6005, Lot 7, including a portion of Tract HUD-98.2, may be owned in fee by the adjacent owner of Block 6005, Lot 13, Ogden Realty Co., and not by New Jersey Transit Corporation as indicated on the official Tax Maps of Jersey City.  Ibid.  The question as to the property boundary between Block 6005, Lot 7 and Lot 13 was communicated to counsel for Ogden Realty Co. in the course of negotiations for the acquisition of easements on Tract HUD-98.3 (Block 6005, Lot 13).  Ibid.  An offer of $3,000,000.00 was made to Ogden Realty Co. for the easements on Tract HUD-98.3 (Block 6005, Lot 13) together with a grant of easement on Tract HUD-98.2 (Block 6005, Lot 7) based on any right or title Ogden Realty Co. had to a portion of Lot 7.  Ibid.

**III.     THE CONVEYANCE OF BLOCK 6005 FROM OGDEN REALTY CO. TO HOBOKEN BROWNSTONE COMPANY**

9. On April 12, 2013, Ogden Realty Co. entered into a Purchase and Sale Agreement with Hoboken Brownstone Company, a "Registered Trade Name of West Bank Realty Inc.", for approximately 7 acres in Jersey City, inclusive of Block 6005, Lot 13 (formerly known as Block 367, Lot A.2), for consideration of $22,000,000.00. Ash Cert., Ex. A (DG-16).

10. Of the purchase price of $22,000,000.00, the amount of $10,000.00 was paid upon execution of the contract, an additional deposit of $2,190,000 was made upon expiration of the due diligence period, and the balance of $19,800,000 was to be paid at a closing scheduled for June 28, 2013. Ash Cert., Ex. A (DG-16).

11. The conveyance by Ogden Realty Co. to Hoboken Brownstone Company was made specifically subject to the condemnation by Texas Eastern Transmission, LP, of the permanent and temporary easements pursuant to an order of the United States District Court for the District of New Jersey dated June 28, 2012, in Civil Action Number 12-3412. Ash Cert., Ex. A (DG-16), ¶3.6.

12. On April 19, 2013, the purchase and sale agreement dated April 12, 2013 between Ogden Realty Co. and The Hoboken Brownstone Company was assigned to "CH Acquisitions 2, LLC, an affiliate of Crescent Heights." Ash Cert., Ex. B (DG-17).

**IV.     NEGOTIATIONS FOR ADDITIONAL PERMANENT EASEMENT RIGHTS ON BLOCK 6005, LOT 7**

13. During the course of negotiations with Ogden Realty Co., Texas Eastern agents learned of the pending sale of Block 6005, Lot 13 to Hoboken Brownstone Co. Gessner Cert., ¶12. In a meeting on June 4, 2013, Texas Eastern agents offered $3,000,000.00 to Hoboken Brownstone Co. as future owners of Tract HUD-98.3. This offer was memorialized in

correspondence to Daniel Gans dated June 5, 2013. Ash Cert., Ex C (DG-2); Deposition of Dan Gans 1T44:6-10.

14. The June 5, 2013 letter to Daniel Gans included a survey referred to as "LPlat_HUD98.3" dated 3/18/13. Ash Cert., Ex C (DG-2). The survey depicted the revised boundary of Block 6005, Lot 13 including a portion of Lot 7 in relation to the existing permanent and temporary easement areas. Furthermore, the survey depicted the approximate location of pre-existing electrical lines in the portion of Lot 7. Ibid.

15. On June 13, 2013, representatives of Ogden Realty Co. and Hoboken Brownstone Co. and Texas Eastern met at Texas Eastern's offices to negotiate a settlement of the pending condemnation of Tract HUD-98.3 (Block 6005, Lot 13) and a grant of easement rights on Tract HUD-98.2 (Block 6005, Lot 7), to the extent Ogden Realty Co. had rights or color of title to a portion of Block 6005, Lot 7. Gessner Cert., ¶13.; Deposition of Dan Gans 1T39:21-40:5; Wegener Cert., ¶5. Daniel Gans participated in the settlement conference on behalf of Hoboken Brownstone, and CH Acquisitions 2, LLC, the contract purchaser of Block 6005, Lots 13 and a portion of Lot 7. Peter Wegener, Esq., participated in the settlement conference as counsel for Ogden Realty, the contract seller of Block 6005, Lots 13 and a portion of Lot 7. The parties, including Texas Eastern, Ogden Realty, and Hoboken Brownstone, reached a settlement of $3,500,000.00 for the acquisition of Tract HUD-98.3 (Block 6005, Lot 13) and a grant of additional permanent easement rights on Tract HUD-98.2 (Block 6005, Lot 7). Ibid.

16. Daniel Gans of Hoboken Brownstone Company understood that the grant of additional permanent easement rights on a portion of Block 6005, Lot 7 was a material term of the settlement between Ogden Realty Co. and Texas Eastern. Deposition of Dan Gans 1T39:21-40:5; 1T50:2-23; 2T215:23-216:6.

17.     Peter Wegener, Esq., counsel for Ogden Realty Co., understood that the grant of additional permanent easement rights on a portion of Block 6005, Lot 7 was a material term of the settlement between Ogden Realty Co. and Texas Eastern.  Wegener Cert., ¶5.

18.     After the June 13, 2013 settlement conference, Ogden Realty, Co. and Hoboken Brownstone negotiated a distribution of the settlement proceeds of $3,500,000.00.  Ash Cert., Ex. D (DG-18); Wegener Cert., ¶6.  The parties negotiated an allocation of the settlement across three separate categories of compensation: 1) the "corner" new additional permanent easement; 2) permanent easement rights; and 3) temporary workspace.  Ibid.  Deposition of Dan Gans at 2T212:21-216:4.  As used in the allocation calculation, the term "corner" referred to the portion of Lot 7, on Block 6005 that Texas Eastern required an additional permanent easement area.  Deposition of Dan Gans at 2T213:18-24.  Counsel for Ogden Realty, Co. also understood the "additional permanent easement area" to mean the new permanent easement on a portion of Block 6005, Lot 7.  Wegener Cert., ¶6.  The amount of "$255,056" was allocated between Ogden Realty and Hoboken Brownstone as compensation for the additional permanent easement rights for the "corner" portion of the settlement.  Ibid.  The amount of "$255,000" was described in the settlement allocation, prepared by Daniel Gans, as "allocation for additiona (sic) permanent taking".  Ibid. Correspondence on June 24, 2013 between Paul Hennessy and counsel for Ogden Realty, Co. confirms that Ogden Realty and Hoboken Brownstone negotiated compensation of $255,000.00 to be paid to Hoboken Brownstone for the additional permanent easement rights on a portion of Block 6005, Lot 7.  Wegener Cert., ¶6.

### V.     HOBOKEN BROWNSTONE COMPANY TERMINATES CONTRACT OF SALE WITH OGDEN REALTY CO.

19.     CH Acquisitions 2, LLC did not purchase the property from Ogden Realty Co. by June 28, 2013 as called for in the contract of sale.  Ash Cert. Ex. E (DG-19).  Bruce Menin, the

7

principal of CH Acquisitions 2, LLC refused to close title with Ogden Realty Co. over expressed concerns of various issues including: 1) the payment of a broker's commission; 2) the Spectra Energy Condemnation Settlement; and 3) a question of title over the portion of Block 6005, Lot 7. Ibid. Deposition of Dan Gans 1T73:25-74:16.

20. By memorandum dated June 29, 2013, Dan Gans and George Vallone provided details as to the status of the issues in controversy that prevented CH Acquisitions 2, LLC from closing title on the Ogden Realty Co. property. Ash Cert. Ex. E (DG-19). As to the Spectra Energy Condemnation Settlement, the memo acknowledged that on June 5, 2013, Gans received a call from Spectra asking for assistance negotiating an additional easement area. Ibid., p. 2. Gans further acknowledged that an allocation of the proposed settlement amount was negotiated between Ogden Realty and Hoboken Brownstone Company with a breakdown between compensation for the temporary and permanent easements. Ibid. Finally, Gans confirmed the final settlement amount of $3,500,000.00 negotiated by Ogden Realty Co., Hoboken Brownstone Company and Texas Eastern at the June 13, 2013 settlement conference. Ibid.

21. The memorandum to Menin from Gans and Vallone also addressed the questionable title of Block 6005, Lot 7. As to the status of title on the portion of Block 6005, Lot 7, the memorandum described the title issue as follows: "Spectra Energy was so convinced that this was a mistake and that the property was in fact owned by Walsh Ogden that they paid an additional $1.4 million to Walsh Ogden to gain access to this narrow strip of land so that they did not have to bend the pipe and go around it." Ash Cert. Ex. (DG-19). E, p. 3. The memorandum continued "[n]otwithstanding any of that, we tried to convince you yesterday that even if we lost that 3300 ft$^2$ piece it would cost just $255,000 of the $1.79 million credit off the purchase price

we had gotten from the Spectra settlement and just 15 units of density on a 1000 unit project."
<u>Ibid</u>.

## VI. NEGOTIATIONS BETWEEN HOBOKEN BROWNSTONE AND NEW PARTNER FOR REVISED TERMS WITH OGDEN REALTY CO.

22.     Faced with potential litigation over the termination of the Contract of Sale with Ogden, Dan Gans and George Vallone sought to reinstate the Contract of Sale with Ogden Realty. On June 28, 2013, Ogden informed Gans and Vallone that the terms of the Contract of Sale were terminated and that in order to close on the Property, Gans and Vallone would have to find a cash buyer and forfeit proceeds from the Spectra settlement. Deposition of Dan Gans 1T79:6-17. Bruce Menin and his partners with CH Acquisitions refused to close on the Property with Ogden Realty's new terms. Deposition of Dan Gans 1T80:5-18.

23.     Bruce Menin discussed the purchase from Ogden Realty with his former classmate, Bill Ackman, at a barbeque in the Hamptons on or about June 29, 2013. Bill Ackman was a former partner of Hoboken Brownstone who was consulted by Bruce Menin as a personal reference for Dan Gans and George Vallone. Deposition of Dan Gans 1T78:3-14. When Bruce Menin terminated the transaction with Ogden Realty, Dan Gans and George Vallone sought to have Bill Ackman as a new partner for the acquisition of the Property. Deposition of Dan Gans 1T81:3-17. Between June 29, 2018 and July 2, 2013, Dan Gans and George Vallone persuaded Bill Ackman to partner with them for the acquisition of the Property. Bill Ackman eventually agreed to partner with Dan Gans and George Vallone to complete the acquisition of the Property. Deposition of Dan Gans 1T83:17-24.

24.     The terms that Bill Ackman agreed to on or about July 1, 2013 were as follows: 1) the purchase price for the Property was $22,000,000; 2) there would be no contract with Ogden

9

Realty; 3) Ogden would receive all the settlement proceeds from Spectra and there would be no allocation of the settlement including permanent easement rights for a portion of Block 6005, Lot 7; and 4) a closing to occur on or before July 3, 2013.  Deposition of Dan Gans 1T84:1-85:3.

## VII. CONVEYANCE OF BLOCK 6005, LOTS 7 & 13 FROM OGDEN REALTY TO COLES JERSEY DEVELOPMENT CO. LLC

25. On or about July 3, 2013, Ogden Realty Co. conveyed Block 6005, Lot 13, together with additional properties to Coles Jersey Development Co., LLC.  Gessner Cert., ¶14.; Deposition of Dan Gans 1T95:16-18; Wegener Cert.", ¶7.   The conveyance included Block 6005, Lot 7. Gessner Cert., ¶14, Ex. A. The grantee of Block 6005, Lot 7 was described on the Deed as "Coles Jersey Development Co., LLC, a New Jersey Limited Liability Company whose post office box is c/o Hoboken Brownstone Company, 161 14th Street, Hoboken, New Jersey 07030".  Wegener Cert., ¶7.   Dan Gans and George Vallone formed the entity Coles Jersey Development Co., LLC on July 1, 2013.  Deposition of Dan Gans 1T101:15-17.  At the closing on July 3, 2013, Gans and Vallone conveyed all interest in Coles Jersey Development Co. LLC to an entity controlled by Bill Ackman.  Deposition of Dan Gans 1T101:5-14.

26. At the July 3, 2013 closing, Daniel Gans, of Hoboken Brownstone Co. signed a release binding "Hoboken Brownstone Company, its heirs, successors, predecessor and assigns" providing all compensation to Ogden Realty "in respect of the condemnation award, or settlement in lieu of condemnation award, arising out of the permanent and temporary condemnation by Texas Eastern Transmission, LP, of certain real property located in the City of Jersey City, New Jersey, as specifically referenced in the matter of <u>Texas Eastern Transmission, L.P. v. 1.73 Acres of Land, More or Less</u>, et. Al. Docket No. 12-3412-SRC, including but not

limited to Block 6005, lots 7 and 13 on the Tax Map of the City of Jersey City." Gessner Cert. ¶12., Ex. H; Wegener Cert., ¶9.

27. At the time of this conveyance, representatives of Ogden and Coles Jersey expressed an understanding that the taking by Texas Eastern in the action bearing Docket No. 12-3412-SRC included easements on both lots 13 and 7 of Block 6005, as depicted on the Tax Map of Jersey City. Wegener Cert., ¶6.

28. At the time of the closing, Daniel Gans, acting on behalf of Coles Jersey Development Co., LLC and The Hoboken Brownstone Co. agreed to waive all claims to any proceeds from the condemnation of easements that included lots 13 and 7 in Block 6005 in the action bearing Docket No. 12-3412-SRC. Wegener Cert., ¶7. Dan Gans approved the draft of the closing documents on behalf of Coles Jersey, specifically the release documents. Ash Cert., Ex. I.

29. "Hoboken Brownstone" is not a legal entity, but rather a "trade name" used by Dan Gans and George Vallone in the course of their real estate development business. Deposition of Dan Gans 2T188:21-189:5.

30. By correspondence dated July 3, 2013, counsel for Ogden Realty Co., advised Texas Eastern that all proceeds from the settlement should be directed to Ogden Realty Co. and that Hoboken Brownstone Co. released all rights to the proceeds of the settlement. Gessner Cert. ¶12., Ex. G.   Wegener Cert., ¶9.

31. On or about July 30, 2013, Texas Eastern and Ogden Realty filed a Consent Order for Final Judgment Fixing Compensation in Docket No. 12-3412-SRC-CLW which was entered on August 6, 2013. Gessner Cert., Ex. I. The total payment under the Consent Order was $3,500,000.00. Wegener Cert., ¶11.

## VIII.   NEGOTIATIONS WITH COLES JERSEY DEVELOPMENT CO., LLC FOR GRANT OF EASEMENT

32.   While Texas Eastern acquired an easement for Tract HUD-98.2 (Block 6005, Lot 7) by grant from New Jersey Transit Corporation, Texas Eastern also sought an easement with a grant from Coles Jersey Development Co, LLC for any right or title to a portion of Block 6005, Lot 7 by virtue of the disputed property line with Block 6005, Lot 13.  Gessner Cert., ¶17.  Consistent with the terms of the settlement between the parties, Texas Eastern sought an instrument granting easement rights for Tract HUD-98.3 (Block 6005, Lot 7) from Coles Jersey Development Co., LLC.  Ibid.  Counsel for Texas Eastern communicated with Daniel Gans, representative of Coles Jersey Development Co., LLC, to obtain a grant of easement for Tract HUD-98.3 (Block 6005, Lot 7).  Ibid.; Ash Cert., ¶7.

33.   Various surveys prepared before the conveyance of the Property to Coles Jersey depicted the location of the Texas Eastern pipelines constructed on the Property with a notation as to the "unrecorded permanent easement" for the benefit of Texas Eastern.  Ash Cert., Ex. J.

34.   By correspondence dated October 24, 2013, counsel for Coles Jersey Development Co., LLC wrote to counsel for Texas Eastern and raised concerns over the pipeline's route across Tract HUD-98.3 (Block 6005, Lot 7) and suggested a meeting to discuss the status of the settlement with Ogden Realty Co.  Gessner Cert., ¶18; Ex. J.

35.   On or about November 19, 2013, Mr. Gessner met with counsel for Coles Jersey Development Co., LLC and Ogden Realty Co. in an attempt to resolve this matter amicably.  Gessner Cert., ¶19.  Of the additional $1,389,900.00 owed to Ogden Realty Co. under the terms of the settlement in the Consent Order, $1,134,900.00 representing a portion of the settlement proceeds allocated for the easements acquired on Block 6005, Lot 13 was paid to Ogden Realty

Co. Ibid. The balance of $255,000.00 representing a portion of the settlement proceeds allocated for the easements acquired on Block 6005, Lot 7 has been held back until a grant of easement is forthcoming. Ibid. The compensation for the easement rights on Block 6005, Lot 7 in the amount of $255,000.00 was identified as the compensation for the "additional permanent taking" as indicated in correspondence from Ogden Realty Co.'s counsel to Texas Eastern's counsel dated October 24, 2013. Ibid., Ex. I. Deposition of Dan Gans 2T218:3-6; Wegener Cert., ¶6.

**DeCOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**

*Attorneys for Plaintiff, Texas Eastern Transmission, LP*

Dated: September 21, 2018      By:      /s/ Jeffrey D. Smith
                                                              JEFFREY D. SMITH