UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TEXAS EASTERN TRANSMISSION, LP, a limited partnership of the State of Delaware, | : : : | Civil Action No. 14-167-SRC-CLW |
| Plaintiff, | : : | |
| v. | : : | |
| 0.077 Acres of Land, More or Less, In The City of Jersey City, Hudson County, New Jersey; COLES JERSEY DEVELOPMENT CO., LLC; OGDEN REALTY CO.; JANE AND JOHN DOES 1 through 50 (fictitious name defendants); and ABC BUSINESS ENTITIES 1 through 50 (fictitious name defendants), | : : : : : : : : : | |
| Defendants. | : | |

**COLES JERSEY DEVELOPMENT CO., LLC'S BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**BUCHANAN INGERSOLL & ROONEY PC**
Incorporated in Pennsylvania
550 Broad Street, Suite 810
Newark, NJ 07974
Telephone:  (973) 273-9800
Facsimile:  (973) 273-9430

*Attorneys for Defendant
Coles Jersey Development Co., LLC*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS .....................................................................................3

LEGAL ARGUMENT.............................................................................................9

     SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE
     COLES JERSEY WAS NOT A PARTY TO THE AGREEMENT
     AMONG TEXAS EASTERN, OGDEN, AND HOBOKEN
     BROWNSTONE—ON BEHALF OF THE PRIOR PURCHASER,
     CRESCENT HEIGHTS—REGARDING EASEMENTS ON
     OGDEN'S PROPERTY. ................................................................................9

     A.    Standard Governing Motions for Summary Judgment. .......................9

     B.    Texas Eastern Fails to Demonstrate That Coles Jersey Has
          Waived Its Rights or is Estopped From Pursuing Compensation
          for the Taking. .................................................................................10

CONCLUSION ....................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Bedwell Co. v. Camden County Improvement Auth.*,
  2014 WL 3499581 (D.N.J. July 14, 2014) ........................................................10

*Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*,
  2014 WL 1908500 (D.N.J. May 13, 2014)...................................................10, 11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)........................................................................................9

*Fay v. Noia*,
  372 U.S. 391(1963).........................................................................................15

*In re Fine Paper Antitrust Litig.*,
  685 F.2d 810, 821-22 (3d Cir. 1982) ..............................................................9

*IMS Health Info. Sols. USA, LLC v. Lempernesse*,
  2016 WL 236214 (D.N.J. Jan 19, 2016)..........................................................11

*Johnson v. Zerbst*,
  304 U.S. 458 (1938).........................................................................................15

*Peterson v. S.S. Wahcondah*,
  331 F.2d 44 (5th Cir.1964) .............................................................................15

*Sambo's Restaurants, Inc. v. City of Ann Arbor*,
  663 F.2d 686 (6th Cir. 1981) ..........................................................................15

*United States v. Asmar*,
  827 F.2d 907 (3d Cir. 1987) ...........................................................................16

**Other Authorities**

10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure
  § 2727 (2d ed. 1983) .......................................................................................9

Fed. R. Civ. P. 56.................................................................................................9

## PRELIMINARY STATEMENT

On July 3, 2013, Coles Jersey Development Co., LLC ("Coles Jersey")
purchased some properties in Jersey City.  Coles Jersey had been formed just days
earlier to take over the transaction when the initial purchaser backed out.  There
was no purchase and sale agreement.  There was no contract.  It was a pure cash
deal—$22 million for a deed.  The only thing Coles Jersey's sole member knew or
was concerned about was getting good, clean title.  When the lawyers confirmed
title was good, Coles Jersey wired the funds.  Neither Hoboken Brownstone Co.
("Hoboken Brownstone") nor its principals, Daniel Gans and George Vallone, was
a party to that transaction.  Rather, the transaction was solely between the seller,
Ogden Realty Co. ("Ogden"), and the buyer, Coles Jersey.

In the fall of 2013, Texas Eastern Transmission, LP ("Texas Eastern")
approached Coles Jersey to obtain an easement over a portion of the property Coles
Jersey had purchased from Ogden, based upon an agreement reached among
Ogden, Texas Eastern, and Hoboken Brownstone (on behalf of the initial
purchaser).  Coles Jersey was not a party to any such agreement and was, therefore,
unaware of it.  Coles Jersey refused to grant an easement without due
compensation.  Hence, this lawsuit.

Texas Eastern contends that Coles Jersey has waived its right to, and is
estopped from seeking, compensation for the easement Texas Eastern seeks.

That's so, Texas Eastern says, based upon a release from Hoboken Brownstone given to Ogden and Texas Eastern.  The problem with Texas Eastern's argument is that Coles Jersey was *not* a party to the agreement.  No basis exists in fact or law to bind Coles Jersey to a contract to which it was not a party.  Consequently, Texas Eastern's motion for summary judgment should be denied and this matter should proceed to a commissioners' hearing.

## STATEMENT OF FACTS[1]

In 2012, Texas Eastern obtained authority to construct a natural gas pipeline and related facilities through Hudson County, New Jersey.  SOF, ¶¶ 1-3.  That pipeline crosses the property at issue here (Block 6005, Lots 7 and 13).  *Id*., 4-6. Texas Eastern negotiated and obtained from the then-owner, Ogden, temporary and permanent easements across the property at issue and adjoining parcels which Ogden owned.  *Id.,* ¶¶ 7-8.

On April 12, 2013, Ogden and Hoboken Brownstone, a company run by Dan Gans and George Vallone, entered into a $22 million Purchase and Sale Agreement for several adjoining parcels (the "Ogden property"), including the property at issue.  *Id.*, ¶ 9.

William Ackman runs Pershing Square, a hedge fund.  CSOF, ¶ 1.  He is also a part-time real-estate investor.  *Ibid.* ("But just so you understand my life, I spen[d] 99 percent of my business time on Pershing Square, and I spend 1 percent of my time on sort of personal investments.  And my biggest personal investments are real estate related.").

Dan Gans and George Vallone first met Bill Ackman in 1987 or 1988; his father is a mortgage broker with whom Gans and Vallone had worked.  CSOF, ¶ 2.

---

[1]These facts are drawn from Texas Eastern's Statement of Undisputed Material Facts ("SOF") with which Coles Jersey does not disagree as well as Coles Jersey's Counterstatement of Undisputed Material Facts ("CSOF").

In the late 1990s, Ackman was an investor in the Maxwell House project that Gans and Vallone were working on in Hoboken. *Ibid.* In or around 2010 or 2011, Gans and Vallone approached Ackman about investing in the Ogden property; Ackman visited the site, but was not interested. CSOF, ¶ 3.

In 2013, Gans and Vallone called Ackman to inform him they had found an investor for the Ogden property, Bruce Menin, whom Ackman knew; Gans and Vallone asked Ackman to act as a reference to Menin, which he did. CSOF, ¶ 4.

On April 19, 2013, Gans and Vallone, on behalf of Hoboken Brownstone, assigned the Purchase and Sale Agreement for the Ogden property to CH Acquisitions 2, LLC, an affiliate of Crescent Heights ("Crescent Heights"), with Ogden's consent. SOF, ¶ 12; CSOF, ¶ 5. Menin was one of the principals of Crescent Heights. *Ibid.* The Purchase and Sale Agreement required the closing to occur on Friday June 28, 2013. CSOF, ¶ 6.

In early to mid-June 2013, representatives of Texas Eastern, Ogden, and Hoboken Brownstone (on behalf of Crescent Heights) met to discuss settlement of Texas Eastern's pending condemnation and easement rights on the Ogden property. SOF, ¶ 15. Texas Eastern, Ogden, and Hoboken Brownstone (on behalf of Crescent Heights) agreed upon compensation of $3.5 million for the easements. *Ibid.*

On June 28, 2013, Crescent Heights informed Gans and Vallone that it would not close on the property because of concerns about obtaining clear title, among other things. CSOF, ¶ 7. As a result, the Purchase and Sale Agreement terminated. *Ibid.*

Gans and Vallone contacted Ogden to try to extend the Purchase and Sale Agreement; Ogden insisted the Agreement was terminated, and the only way it would sell the property was an all-cash deal, within the next several days. CSOF, ¶ 8. Gans and Vallone then reached out to Ackman seeking his assistance in bringing Menin, and Crescent Heights, back to the deal. CSOF, ¶ 9. Ackman suggested Gans and Vallone provide Menin with factual details addressing the issues Menin was concerned about, to explain any misunderstandings, and to follow up with a call to Menin. CSOF, ¶ 10. Ackman was going to see Menin at a barbecue that weekend and offered to put in a good word for Gans and Vallone. *Ibid.*

When it became clear that Crescent Heights would not come back to the deal, Gans and Vallone contacted Ackman to see if he would take over the transaction. CSOF, ¶ 11. Gans and Vallone met with Ackman and his father the night of Monday July 1, 2013. CSOF, ¶ 12. Ackman told Gans and Vallone that he would consider the investment. CSOF, ¶ 13. However, Ackman was "waffling about whether or not to do this deal" and sent an email to his real-estate lawyer

later that night saying he had decided not to move forward.  *Ibid.* ("I was up and down as to whether to do it or not.").

Ackman contacted Gans and Vallone the next day, July 2, 2013, to tell them his decision; as Ackman testified, Vallone "talked me back off the cliff and convinced me to go forward."  CSOF, ¶ 14.  The closing took place on July 3, 2013.  CSOF, ¶ 15.  The deal essentially came together in a day or two.  *Ibid.* Ackman "literally did no due diligence on this property.  We just didn't have the time."  *Ibid.*

Ackman's primary—if not exclusive—concern when purchasing the property was to ensure he got "good title to the property, again, we're buying without a contract, we're buying without anything.  You know, no reps, nothing." CSOF, ¶ 16 ("I wasn't going to buy the property unless we got good title.").  The transaction closed without a purchase and sale agreement.  *Ibid.*  It was an all-cash deal—"basically you wire the money tomorrow and you own the property."  *Ibid.*

Coles Jersey Development Co., LLC the purchaser of the Ogden property, was formed on July 1, 2013.  CSOF, ¶ 17.  At the time of the closing, Ackman, through entities he controlled, was the sole member of Coles Jersey.  *Ibid.*

Gans attended the closing on behalf of Coles Jersey.  CSOF, ¶ 18.  Gans was an "Authorized Person" permitted "to execute and deliver documents and

agreements on behalf of Coles Jersey" but had no "power or authority to manage or otherwise conduct [Coles Jersey's] affairs." *Ibid.*

While Ackman understood, at the time of closing, that there was an easement for a pipeline on the Ogden property, he was unaware of any prior litigation between Ogden and the pipeline company; he was unaware of whether Gans, Vallone, or Hoboken Brownstone had engaged in any sort of settlement with the pipeline company; he was unaware of whether the seller, Ogden, had made it a condition of sale that the buyer give up any claims to condemnation proceeds; he was unaware of whether Crescent Heights's title concerns specifically related to Block 6005, Lot 7.  CSOF, ¶ 19.  As Ackman testified, "I actually didn't even realize you could sort of do a deal without a contract.  And my lawyer told me, make sure you get good title.  If you got good title I'll tell you, you can wire the money.  That's what I knew."  CSOF, ¶ 20.

In October 2013, Texas Eastern's counsel contacted Gans to obtain an easement for the property that is the subject of this lawsuit, a portion of Block 6005, Lot 7.  CSOF, ¶ 21.  Gans understood that it related to the settlement that had been reached between Texas Eastern and Ogden in the spring of 2013, but he was "dumbfounded at the time" because he thought the easement rights had been resolved prior to the Coles Jersey closing.  *Ibid.*

While the Seller's Affidavit of Title which Ogden executed at the closing contained an exception for an easement to Texas Eastern across Block 6005, Lot 13, it did not contain any exception for an easement to Texas Eastern across Block 6005, Lot 7.CSOF, ¶ 22

In the fall of 2013, Ackman learned that there was a dispute over a portion of the property relating to the pipeline, which dispute is the subject of this action. CSOF, ¶ 23.

## LEGAL ARGUMENT

**SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE COLES JERSEY WAS NOT A PARTY TO THE AGREEMENT AMONG TEXAS EASTERN, OGDEN, AND HOBOKEN BROWNSTONE—ON BEHALF OF THE PRIOR PURCHASER, CRESCENT HEIGHTS—REGARDING EASEMENTS ON OGDEN'S PROPERTY.**

Texas Eastern has failed to show that it is entitled to the relief it seeks in its motion for summary judgment. For the reasons below, the motion should be denied.

### A.    Standard Governing Motions for Summary Judgment.

As the Court knows, summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment *as a matter of law*.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56) (emphasis added). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Id*. at 331 (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727, p. 121 (2d ed. 1983)) (White, J. dissenting); *cf. In re Fine Paper Antitrust Litig.*, 685 F.2d 810,

9

821-22 (3d Cir. 1982) (when reviewing a directed verdict, "'[t]he appellate court must consider the record as a whole and in the light most favorable to the non-moving party, drawing all reasonable inferences to support its contentions. If no reasonable resolution of the conflicting evidence and inferences therefrom could result in a judgment for the non-moving party, the appellate court must affirm the lower court's decision.'") (quoting *Edward J. Sweeney & Sons v. Texaco, Inc.*, 637 F.2d 105, 115 (3d Cir. 1980), *cert. denied*, 451 U.S. 911 (1981)).

As demonstrated below, Texas Eastern—the party which bears the burden of proof at trial—has failed to establish that it is entitled to judgment as a matter of law, or a directed verdict at trial.  Simply put, the record evidence does not support Texas Eastern's allegations of waiver and estoppel.

**B.    Texas Eastern Fails to Demonstrate That Coles Jersey Has Waived Its Rights or is Estopped From Pursuing Compensation for the Taking.**

It's a basic tenet of contract law that only parties to a contract are bound by that contract.  *Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*, 2014 WL 1908500, at *3 (D.N.J. May 13, 2014) ("Ordinarily, a party not a signatory to a contract cannot be bound by the terms of that contract.") (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001)); *Bedwell Co. v. Camden County Improvement Auth.*, 2014 WL 3499581, at *3 (D.N.J. July 14, 2014) ("Except for limited

10

circumstances not present here, a contract cannot define the legal obligations between two entities unless those two entities are parties to the contract.") (footnote omitted).

The Third Circuit has been "reluctant to enforce a contractual clause against a non-party, unless 'accepted principles of agency or contract' make it appropriate." *Beth Schiffer Fine Photographic Arts, Inc.*, 2014 WL 1908500, at *3 (quoting *E.I DuPont*, 269 F.3d at 202). "The Circuit in *Bouriez v. Carnegie Mellon* explained that these accepted principles, in the arbitration setting, are the theories of 'third party beneficiary, agency and equitable estoppel.' 359 F.3d 292, 294 (3d Cir. 2004)." *Ibid*. A third-party beneficiary of a contract exists where "the contract was made *for the benefit of* said third party within the intent and contemplation of the contracting parties." *IMS Health Info. Sols. USA, LLC v. Lempernesse*, 2016 WL 236214, at *6 (D.N.J. Jan 19, 2016) (citations omitted) (quotations omitted) (emphasis added). Nothing in the Release or the record demonstrates that the Release "was made for the benefit of [Coles Jersey] within the intent and contemplation of the contracting parties."

Although Texas Eastern contends that Gans was Coles Jersey's agent at the closing, as discussed above, he was simply an "authorized person" under Coles Jersey's Operating Agreement. And there cannot be and should not be any inference that Gans was Coles Jersey's agent at the closing, because the Operating

Agreement is part of the closing report—indeed, just a couple of pages after the Release upon which Texas Eastern has built its case.  *See* Ash Cert., Exh. H; *see also*, Deposition of Daniel Gans, 1T84:5-6 ("So I was given the authority to be the signer for Bill Ackman at the closing.").

Thus, neither third-party beneficiary status nor agency theories support imposing Hoboken Brownstone's Release on non-party Coles Jersey.  And, as will be explained below, the final exception to the rule against imposing contracts on non-signatories—equitable estoppel—is inapplicable as well.

Rather, the contract upon which Texas Eastern premises its arguments was executed by Hoboken Brownstone for the benefit of Ogden and Texas Eastern:

## <u>RELEASE</u>

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, The Hoboken Brownstone Company, its heirs, successors, predecessors, and assigns (collectively the "Company") hereby irrevocably and forever unconditionally release, remit, acquit, waive and discharge Ogden Realty Company, a New Jersey General Partnership, and Texas Eastern Transmission, LP, a Limited Partnership of the State of Delaware (both entities hereinafter collectively referred to herein as the "Released Companies"), for all causes of action, claims, counterclaims, suits, rights, demands, damages, injunctive or declaratory relief, costs, expenses, accounts, judgments, executions, debts, losses, obligations, rights of contribution or indemnification, attorneys' fees, and any and all other liabilities of any kind or nature or description whatsoever, whether arising at law or in equity, under Federal law, State law, common law or any other law, whether known or unknown, asserted or unasserted, express or implied, foreseen or unforeseen, suspected or unsuspected, which the Company ever had, presently has, may have, or claim or assert to have, against the Released Companies from the

*beginning of time until the date of this Agreement in respect of the condemnation award, or settlement in lieu of condemnation award, arising out of the permanent and temporary condemnation by Texas Eastern Transmission, LP., of certain real property located in the City of Jersey City, New Jersey, as specifically referenced in the matter of* <u>Texas Eastern Transmission L.P. v. 1.73 Acres of Land, More or Less. et.al.</u> *Docket No. 12-3412-SRC, including, but not limited to, Block 6005, Lots 7 and 13 on the Tax Map of the City of Jersey City.*

*This Release is intended to be construed to release any and all such claims and rights in respect of such condemnation award, or settlement in lieu of condemnation award, arising on or before the date of execution of this document to the fullest extent permitted by law.*

The Hoboken Brownstone Company

By: *S/Daniel Gans*                    7/3/13
Daniel Gans,                           Date
Chief Executive Officer

Dalton Declaration, Exhibit 3.

Coles Jersey is not a party to that Release.  It is not a beneficiary of the Release.  Consequently, it cannot be, and is not, bound by the Release which Hoboken Brownstone gave to and for the benefit of Ogden and Texas Eastern.

Contrary to Texas Eastern's contention, Gans was *not* "a principal of Coles Jersey."  (DE 45-1, at 16.)  The only "principal" of Coles Jersey was its sole member, Bill Ackman, through entities he controlled.  CSOF, ¶ 17.  Moreover, when Gans "attended the June 2013 settlement conference [and] participated in negotiations" (DE 45-1, at 16), Coles Jersey did not exist.  Hoboken Brownstone and Bill Ackman/Coles Jersey were not "partners" in the purchase transaction as

Texas Eastern misleadingly alleges.  (DE 45-1, at 21.)  Ackman, through Coles

Jersey, was the sole purchaser of the property.  CSOF, ¶ 17.  Gans and Vallone had

no interest in Coles Jersey at the time of the closing; they had conveyed whatever

interest they might have had to Ackman on July 2, 2013—*before* the closing.

Coles Jersey Response to Statement of Facts, ¶ 25 ("Gans and Vallone assigned

their interests in Coles Jersey Development Co., LLC to TABLE Jersey LLC on

July 2, 2013.") (citing Ash Cert., Ex. H, at p. 75-79).

Further, Gans was not "acting on behalf of Coles Jersey" (DE 45-1, at 22)

when he—on behalf of *Hoboken Brownstone only*—executed the Release to

Ogden.  Coles Jersey cannot in any manner be considered Hoboken Brownstone's

assignee under the Purchase and Sale Agreement between Hoboken Brownstone

and Ogden, because the Purchase and Sale Agreement *expired* before the closing—

there was nothing for Hoboken Brownstone to assign to Coles Jersey.  CSOF, ¶¶ 7,

8.  Gans did not—on behalf of Coles Jersey—enter "into a new agreement with

Ogden Realty for the purchase of Block 6005 in which the buyer expressly

forfeited participation in the settlement proceeds from the Prior Ogden Action."

(DE 45-1, at 23.)  There simply is no such agreement on behalf of Coles Jersey.

Gans did not approve "the form of closing documents between Coles Jersey and

Ogden Realty including the Release prepared by Ogden Realty's counsel" as Texas

Eastern suggests.  (DE 29, at 24.)  Rather, Gans approved the form of Release

14

between Hoboken Brownstone and Ogden.  (Ash Cert., Ex. I.)  And, moreover,

there was no purchase or sale agreement between Coles Jersey and Ogden—it was

an all-cash transaction, $22 million for a deed.

Simply put, Coles Jersey was not a party to Hoboken Brownstone's Release.

As a result, Texas Eastern's argument that Coles Jersey has waived its right to seek

compensation for the easement, or is estopped from doing so, is without merit.[2]

As Texas Eastern explains, "Waiver is the intentional or voluntary

relinquishment or abandonment of a known right or privilege."  DE 45-1, at 17

(citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Fay v. Noia*, 372 U.S. 391,

439 (1963); *Peterson v. S.S. Wahcondah*, 331 F.2d 44, 48 (5th Cir.1964); *Sambo's*

*Restaurants, Inc. v. City of Ann Arbor*, 663 F.2d 686, 693 (6th Cir. 1981)).  Coles

Jersey does not take issue with Texas Eastern's recitation of the law of waiver.

---

[2]Indeed, as Texas Eastern notes in its brief(DE 45-1, at 26):

> In a July 3, 2013 letter, sent via email the same day as the closing with Coles
> Jersey (upon Gans signing the Release), Ogden's counsel alerted Texas Eastern:
>
>> "[a]s a result of further negotiations with Hoboken Brownstone
>> Co., that entity is no longer involved in any transactions regarding
>> the subject property. I have requested that they provide a Release
>> waiving any interest in the proceeds of the within condemnation
>> action. Obviously, the form of Consent Order for Final Judgment
>> fixing compensation previously submitted to me required
>> revision."
>
> Wegener Cert., Ex. C. The Release referred to by Wegener is the Release signed
> at the closing by Daniel Gans. Wegener Cert., Ex. D.

If Hoboken Brownstone was "no longer part of any transactions regarding the subject property,"
how could it bind Coles Jersey, which *was* a party to that transaction?

15

The problem, however, is that Hoboken Brownstone—*not Coles Jersey*— intentionally and voluntarily relinquished *Hoboken Brownstone's* right to receive compensation from Ogden and Texas Eastern.  Waiver is inapplicable here.

Likewise, Coles Jersey takes no issue with Texas Eastern's recitation of the law of estoppel.  Texas Eastern correctly synthesizes the caselaw, stating that, "to succeed on a traditional claim of estoppels [sic], the litigant must prove (1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment."  (DE 45-1, at 25) (citing *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987)).  Texas Eastern has failed to point to any "misrepresentation" by Coles Jersey upon which it reasonably relied.

Texas Eastern again conflates the facts by arguing (twice) that it entered into a consent order fixing compensation for the taking "based on the terms negotiated on June 13, 2013, by inducement of Gans, on behalf of Hoboken Brownstone and Coles Jersey and Ogden Realty's counsel."  (DE 45-1 at 26.)  *But Coles Jersey did not exist on June 13, 2013*.  How could Gans have entered into an agreement on behalf of an entity that did not exist?  To ask the question answers it.

Likewise, Texas Eastern's reliance on Ogden's counsel's July 3, 2013 letter (DE 45-1, at 26) fails to demonstrate any misrepresentation by Coles Jersey.  Quite the contrary—Odgen's counsel's letter accurately reflects that Ogden had obtained a release from Hoboken Brownstone.  There's no misrepresentation there, either.

16

Similarly, Texas Eastern again takes liberty with the facts when asserting that Coles Jersey "benefitted from the settlement" between Texas Eastern and Ogden. (DE 45-1, at 27.) There's not a single fact in the record—no deposition testimony, no documents, nothing—supporting that Coles Jersey "benefitted from the settlement" between Texas Eastern and Ogden—because it didn't. Nor did Coles Jersey "expressly waive[] any interest in the proceeds" as Texas Eastern contends. (*Ibid*.) Hoboken Brownstone waived those interests. Nor is Coles Jersey trying to "double-dip" by seeking compensation "for the same easement rights." (*Ibid.*) Coles Jersey never granted any easements, and the easement at issue was not of record when Coles Jersey purchased the property.

Regardless of whatever deal may have been negotiated among and between Texas Eastern, Hoboken Brownstone (on behalf of Crescent Heights), and Ogden, Coles Jersey was not a party to those negotiations or a beneficiary of their outcome. Coles Jersey paid $22 million for a deed. Neither that deed, nor the Seller's Affidavit of Title, nor the title policy, nor the land records, nor anything reflected an easement across Block 6005, Lot 7 in favor of Texas Eastern. Coles Jersey is entitled to just compensation for the easement Texas Eastern seeks.

## CONCLUSION

Coles Jersey was not a party to the Release which Hoboken Brownstone executed in favor of Ogden.  Courts ordinarily do not enforce contracts against non-parties.  And none of the exceptions to such non-enforcement exist here.  Consequently, Texas Eastern's argument that Coles Jersey has waived its rights and is estopped from pursuing its claim for compensation, based on Hoboken Brownstone's Release, are without merit.  Texas Eastern has failed to proffer any facts upon which the Court could find that it is entitled to summary judgment, as a matter of law, on its contentions of waiver and estoppel.  Texas Eastern's motion should be denied and this matter should proceed to a commissioners' hearing.

s/Christopher J. Dalton
Christopher J. Dalton, Esq.
BUCHANAN INGERSOLL & ROONEY PC
550 Broad Street, Suite 810
Newark, NJ 07974

Stanley Yorsz, Esq. (pro hac vice)
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA  15219-1410

*Attorneys for Defendant*
*Coles Jersey Development Co., LLC*

Dated:  November 19, 2018