**BUCHANAN INGERSOLL & ROONEY PC**
Incorporated in Pennsylvania
550 Broad Street, Suite 810
Newark, NJ 07974
Telephone: (973) 273-9800
Christopher J. Dalton, Esq.

One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA  15219-1410
Telephone: (412) 562-8841
Stanley Yorsz, Esq.
*Attorneys for Defendant*
*Coles Jersey Development Co., LLC*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TEXAS EASTERN TRANSMISSION, LP, a limited partnership of the State of Delaware | : | Civil Action No. 14-167-SRC-CLW |
| Plaintiff, | : | **RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS AND COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS** |
| v. | : | |
| 0.077 Acres of Land, More or Less, In The City of Jersey City, Hudson County, New Jersey; COLES JERSEY DEVELOPMENT CO., LLC; OGDEN REALTY CO.; JANE AND JOHN DOES 1 through 50 (fictitious name defendants); and ABC BUSINESS ENTITIES 1 through 50 (fictitious name defendants), | : | |
| Defendants. | : | |

Defendant, Coles Jersey Development Co., LLC ("Coles Jersey"), by and through its undersigned counsel, sets forth the following Response to Statement of Undisputed Material Facts (DE 45-2) filed by Plaintiff Texas Eastern Transmission, LP ("Texas Eastern") and Coles Jersey's Counterstatement of Undisputed Material Facts in accordance with Local Civil Rule 56.1(a).

## RESPONSE TO TEXAS EASTERN'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Coles Jersey agrees, upon information and belief, with the facts set forth in Paragraph 1.

2. Coles Jersey agrees, upon information and belief, with the facts set forth in Paragraph 2.

3. Coles Jersey agrees, upon information and belief, with the facts set forth in Paragraph 3.

4. Coles Jersey agrees, upon information and belief, with the facts set forth in Paragraph 4.

5. Coles Jersey agrees, upon information and belief, with the facts set forth in Paragraph 5.

6. Coles Jersey agrees, upon information and belief, with the facts set forth in Paragraph 6.

7. Coles Jersey agrees, upon information and belief, with the facts set

forth in Paragraph 7.

8. Coles Jersey agrees, upon information and belief, with the facts set forth in Paragraph 8.

9. Coles Jersey agrees with the facts set forth in Paragraph 9.

10. Coles Jersey agrees with the facts set forth in Paragraph 10.

11. Coles Jersey disagrees, in part, with the facts set forth in Paragraph 11. The Purchase and Sale Agreement between Ogden Realty Co. ("Ogden") and Hoboken Brownstone Company ("Hoboken Brownstone") was for a contemplated conveyance, which did not transpire. Coles Jersey otherwise agrees with the remaining facts set forth in Paragraph 11.

12. Coles Jersey agrees with the facts set forth in Paragraph 12.

13. Coles Jersey agrees with the facts set forth in Paragraph 13.

14. Coles Jersey disagrees, in part, with the facts set forth in Paragraph 14. The survey does not depict "the approximate location of pre-existing electrical lines in the portion of Lot 7." Ash Cert. Ex. C (DG-2). Coles Jersey otherwise agrees with the remaining facts set forth in Paragraph 14.

15. Coles Jersey disagrees, in part, with the facts set forth in Paragraph 15. CH Acquisitions 2 was the proposed purchaser of the property at interest pursuant to Hoboken Brownstone's assignment of the Purchase and Sale Agreement with Ogden. Ash Cert., Ex. A, B. Hoboken Brownstone, on behalf of

CH Acquisitions 2, reached a settlement of $3,500,000. Coles Jersey otherwise agrees with the remaining facts set forth in Paragraph 15.

16. Coles Jersey agrees with the facts set forth in Paragraph 16.

17. Coles Jersey agrees, upon information and belief, with the facts set forth in Paragraph 17.

18. Coles Jersey disagrees, in part, with the facts set forth in Paragraph 18. Coles Jersey is without knowledge of Ogden's counsel's understanding of the "additional permanent easement area" or the June 24, 2013 correspondence between Paul Hennessey and Ogden's counsel, as that correspondence is not appended to counsel's certification. Coles Jersey otherwise agrees with the remaining facts set forth in Paragraph 18.

19. Coles Jersey agrees with the facts set forth in Paragraph 19.

20. Coles Jersey agrees with the facts set forth in Paragraph 20.

21. Coles Jersey agrees with the facts set forth in Paragraph 21.

22. Coles Jersey disagrees, in part, with the facts set forth in Paragraph 22. Coles Jersey disagrees that Gans and Vallone were "[f]aced with potential litigation over the termination of the Contract of Sale with Ogden." This statement is not supported by record citation. Gans and Vallone were aware that there was "a battle brewing" between Crescent Heights and Ogden. Deposition of Daniel Gans, 1T80:5-81:2. Coles Jersey otherwise agrees with the remaining facts set forth in

Paragraph 22.

23. Coles Jersey disagrees, in part, with the facts set forth in Paragraph 23. Bill Ackman was not a "former partner of Hoboken Brownstone" as stated. Bill Ackman was an investor in a prior development in Hoboken. Deposition of Dan Gans 1T72:3-12. Coles Jersey otherwise agrees with the remaining facts set forth in Paragraph 22.

24. Coles Jersey disagrees, in part, with the facts set forth in Paragraph 24. Coles Jersey did not agree that "Ogden would receive all the settlement proceeds from Spectra and there would be no allocation of the settlement including permanent easement rights for a portion of Block 6005, Lot 7." Coles Jersey was unaware of any such agreement. Deposition of William Ackman, 75:4-78:16. Coles Jersey otherwise agrees with the remaining facts set forth in Paragraph 24, although the record citation does not fully support the statement.

25. Coles Jersey disagrees, in part, with the facts set forth in Paragraph 25. Coles Jersey Development Co., LLC was formed by Kevin T. O'Brien on July 1, 2013, at the request of Dan Gans and George Vallone. Ash Cert., Ex. H, at p. 82. Gans and Vallone assigned their interests in Coles Jersey Development Co., LLC to TABLE Jersey LLC on July 2, 2013. Ash Cert., Ex. H, at p. 75-79. Coles Jersey otherwise agrees with the remaining facts set forth in Paragraph 25.

26. Coles Jersey agrees with the facts set forth in Paragraph 26.

27. Coles Jersey disagrees with the facts set forth in Paragraph 27. Dan Gans was not a "representative" of Coles Jersey; he was an "Authorized Person" permitted "to execute and deliver documents and agreements on behalf of Coles Jersey" but had no "power or authority to manage or otherwise conduct [Coles Jersey's] affairs." Ash Cert., Ex. H, Coles Jersey Limited Liability Company Agreement, §11 (DE 45-12, at p. 77); Deposition of Dan Gans 1T84: 5-6 ("So I was given the authority to be the signer for Bill Ackman at the closing.").

28. Coles Jersey disagrees, in part, with the facts set forth in Paragraph 28. The release agreement was solely between Hoboken Brownstone and Ogden; Coles Jersey was not a party to that release. Ash Cert., Ex. H, at p. 72. Coles Jersey agrees that Dan Gans approved drafting the release agreement between Hoboken Brownstone and Ogden. Ash Cert., Ex. I.

29. Coles Jersey agrees with the facts set forth in Paragraph 29.

30. Coles Jersey agrees, upon information and belief, with the facts set forth in Paragraph 30.

31. Coles Jersey agrees, upon information and belief, with the facts set forth in Paragraph 31.

32. Coles Jersey disagrees, in part, with the facts set forth in Paragraph 32. Coles Jersey was not a party to any settlement among Texas Eastern, Ogden, and Hoboken Brownstone. Coles Jersey disagrees that Dan Gans was a

"representative" of Coles Jersey; Gans was an "Authorized Person" permitted "to execute and deliver documents and agreements on behalf of Coles Jersey" but had no "power or authority to manage or otherwise conduct [Coles Jersey's] affairs." Ash Cert., Ex. H, Coles Jersey Limited Liability Company Agreement, §11 (DE 45-12, at p. 77). Coles Jersey otherwise agrees with the remaining facts set forth in Paragraph 32.

33. Coles Jersey disagrees with the facts set forth in Paragraph 33. Exhibit J to the Ash Certification does not contain any notation of "unrecorded permanent easement" and is dated October 17, 2013, more than three months after Coles Jersey purchased the property at issue. Ash Cert., Ex. J.

34. Coles Jersey agrees with the facts set forth in Paragraph 34.

35. Coles Jersey agrees with the facts set forth in Paragraph 35, but notes that it was not a party to any negotiations or agreements between or among Hoboken Brownstone, Ogden, and Texas Eastern.

## COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS

1. William Ackman runs Pershing Square, a hedge fund. Deposition of Daniel Gans, 1T72:3-8. He is also a part-time real-estate investor. Deposition of William Ackman, 16:7-10 ("But just so you understand my life, I spen[d] 99 percent of my business time on Pershing Square, and I spend 1 percent of my time on sort of personal investments. And my biggest personal investments are real

estate related.").

2. Dan Gans and George Vallone first met Ackman in 1987 or 1988; his father is a mortgage broker with whom Gans and Vallone had worked. Deposition of Daniel Gans, 1T71:21-72:2. In the late 1990s, Bill Ackman was an investor in the Maxwell House project that Gans and Vallone were working on in Hoboken. Deposition of Daniel Gans, 1T72:9-15; Deposition of William Ackman, 19:3-23.

3. In or around 2010 or 2011, Gans and Vallone approached Ackman about investing in the property at issue; Ackman visited the site, but was not interested. Deposition of William Ackman, 20:24-22:1.

4. In 2013, Gans and Vallone called Ackman to inform him they had found an investor for the property, Bruce Menin, whom Ackman knew; Gans and Vallone asked Ackman to act as a reference to Menin, which he did. Deposition of William Ackman, 23:24-24:17, 27:5-28:4.

5. On April 13, 2013, Gans and Vallone, on behalf of Hoboken Brownstone, assigned the Purchase and Sale Agreement for the Ogden property to CH Acquisitions 2, LLC, an affiliate of Crescent Heights, with Ogden's consent. Ash Cert., Ex. B. Menin was one of the principals of Crescent Heights. Deposition of Daniel Gans, 1T77:17-20.

6. The Purchase and Sale Agreement required the closing to occur on Friday June 28, 2013. Ash Cert., Ex. A, Article 6.1.

8

7. On June 28, 2013, Crescent Heights informed Gans and Vallone that it would not close on the property because of concerns about obtaining clear title, among other things. Deposition of Daniel Gans, 1T77:14-77:25, 1T74:13-16. As a result, the Purchase and Sale Agreement terminated. Deposition of Daniel Gans, 1T73:25-74:4, 1T76:20-22.

8. Gans and Vallone contacted Ogden to try to extend the Purchase and Sale Agreement; Ogden insisted the Agreement was terminated, and the only way it would sell the property was an all-cash deal, within the next several days. Deposition of Daniel Gans, 79:6-17.

9. Gans and Vallone then reached out to Ackman seeking his assistance in bringing Menin, and Crescent Heights, back to the deal. Deposition of William Ackman, 28:25-29:11; Deposition of Daniel Gans, 79:18-80:4.

10. Ackman suggested Gans and Vallone provide Menin with factual details addressing the issues Menin was concerned about, to explain any misunderstandings, and to follow up with a call to Menin. Deposition of William Ackman, 30:1-7. Ackman was going to see Menin at a barbecue that weekend and offered to put in a good word for Gans and Vallone. *Id.*, 31:21-33:1.

11. When it became clear that Crescent Heights would not come back to the deal, Gans and Vallone contacted Ackman to see if he would take over the transaction. Deposition of William Ackman, 43:15-25.

12. Gans and Vallone met with Ackman and his father the night of Monday July 1, 2013. Deposition of William Ackman, 56:20-57:23, Declaration of Christopher J. Dalton, Ex. B (Deposition Exhibit WA-6).

13. Ackman told Gans and Vallone that he would consider the investment. Deposition of William Ackman, 68:19-22. However, Ackman was "waffling about whether or not to do this deal" and sent an email to his real-estate lawyer later that night saying he had decided not to move forward. Deposition of William Ackman, 67:20-25, 68:19-25; 36:23-37:1 ("I was up and down as to whether to do it or not.").

14. Ackman contacted Gans and Vallone the next day, July 2, 2013, to tell them his decision; as Ackman testified, Vallone "talked me back off the cliff and convinced me to go forward." Deposition of William Ackman, 68:6-9.

15. The closing took place on July 3, 2013. Deposition of William Ackman, 68:1-4. The deal essentially came together in a day or two. *Id.*, 34:9-16. Ackman "literally did no due diligence on this property. We just didn't have the time." *Id.,* 40:22-24.

16. Ackman's primary—if not exclusive—concern when purchasing the property was to ensure he got "good title to the property, again, we're buying without a contract, we're buying without anything. You know, no reps, nothing." Deposition of William Ackman, 53:5-7; 69:16-17 ("I wasn't going to buy the

property unless we got good title."). The transaction closed without a purchase and sale agreement. *Id.* at 55:1-4. It was an all-cash deal—"basically you wire the money tomorrow and you own the property." *Id*. at 54:20-25.

17. Coles Jersey Development Co., LLC was formed on July 1, 2013. Ash Cert., Ex. H, at p. 82. At the time of the closing, Ackman was, through companies he controlled, the sole member of Coles Jersey. Deposition of William Ackman, 73:18-21.

18. Gans attended the closing on behalf of Coles Jersey. Deposition of William Ackman, 74: 5-7. Gans was an "Authorized Person" permitted "to execute and deliver documents and agreements on behalf of Coles Jersey" but had no "power or authority to manage or otherwise conduct [Coles Jersey's] affairs." Ash Cert., Ex. H, Coles Jersey Limited Liability Company Agreement, §11 (DE 45-12, at p. 77).

19. While Ackman understood, at the time of closing, that there was an easement for a pipeline on the property (Deposition of William Ackman, 75:4-10), he was unaware of any prior litigation between Ogden and the pipeline company (*id*., 75:23-76:1); he was unaware of whether Gans, Vallone, or Hoboken Brownstone had engaged in any sort of settlement with the pipeline company (*id*., 76:22-77:1); he was unaware of whether the seller, Ogden, had made it a condition of sale that the buyer give up any claims to condemnation proceeds (*id*., 49:25-

50:4, 70:2-5, 77:2-6); he was unaware of whether Crescent Heights's title concerns specifically related to Block 6005, Lot 7. *Id.*, 78:12-16.

20. As Ackman testified, "I actually didn't even realize you could sort of do a deal without a contract. And my lawyer told me, make sure you get good title. If you got good title I'll tell you, you can wire the money. That's what I knew." Deposition of William Ackman, 77:17-22.

21. In October 2013, Texas Eastern's counsel contacted Gans to obtain an easement for the property that is the subject of this lawsuit, a portion of Block 6005, Lot 7. Deposition of Daniel Gans, 2T259:11-6. Gans understood that it related to the settlement that had been reached between Texas Eastern and Ogden in the spring of 2013, but he was "dumbfounded at the time" because he thought the easement rights had been resolved prior to the Coles Jersey closing. *Id.*, 260:3-10.

22. While the Seller's Affidavit of Title which Ogden executed at the closing contained an exception for an easement to Texas Eastern across Block 6005, Lot 13, it did not contain an exception for an easement to Texas Eastern on Block 6005, Lot 7. Ash Cert., Ex. H, Affidavit of Title, §7 (DE 45-12, at p. 12).

23. In the fall of 2013, Ackman learned that there was a dispute over a portion of the property relating to the pipeline, which dispute is the subject of this action. Deposition of William Ackman, 78:17-79:6.

*s/Christopher J. Dalton*
Christopher J. Dalton, Esq.
BUCHANAN INGERSOLL & ROONEY PC
550 Broad Street, Suite 810
Newark, NJ 07974

Stanley Yorsz, Esq. (pro hac vice)
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA  15219-1410

*Attorneys for Defendant*
  *Coles Jersey Development Co., LLC*

Dated:  November 19, 2018