UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TEXAS EASTERN TRANSMISSION, LP, a limited partnership of the State of Delaware<br><br>Plaintiff,<br>v.<br><br>0.077 Acres Of Land, More or Less, In The City of Jersey City, Hudson County, New Jersey; COLES JERSEY DEVELOPMENT CO., LLC; OGDEN REALTY CO.; JANE AND JOHN DOES 1 through 50 (fictitious name defendants); and ABC BUSINESS ENTITIES 1 through 50 (fictitious name defendants),<br><br>Defendants. | Civil Action No. 14-167-SRC-CLW |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF, TEXAS EASTERN TRANSMISSION, LP'S MOTION FOR SUMMARY JUDGMENT**

DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP
Glenpointe Centre West
Teaneck, New Jersey 07666
Tel.: (201) 928-1100
Attorneys for Plaintiff,
Texas Eastern Transmission, LP

On the Brief
    Michael J. Ash, Esq.

Of Counsel
    Jeffrey D. Smith, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ......................................................................................... 1

LEGAL ARGUMENT ........................................................................................................ 2

I. DEFENDANTS HAVE SET FORTH NO ISSUES OF MATERIAL FACT THAT REFUTE THE ARGUMENT THAT COLES JERSEY DEVELOPMENT CO., LLC WAIVED ITS RIGHT TO COMPENSATION FOR THE LOT 7 EASEMENT AS A MATTER OF LAW. ................................................................................................... 2

    A. Coles Jersey's Recharacterization of Texas Eastern's Undisputed Facts Fails to Raise a Genuine Issue of Fact. ............................................................................. 2

    B. The Coles Release ................................................................................................ 4

    C. The Prior Purchaser Release. ............................................................................... 5

    D. The Absence of a Formal Purchase and Sale Agreement Does Not Change Gans' Agency. ................................................................................................................ 7

II. THE COURT SHOULD FIND THAT COLES JERSEY IS EQUITABLY ESTOPPED FROM PURSUING ADDITIONAL COMEPNSATION. .................................................. 9

III. COLES JERSEY ACQUIRED TITLE TO THE PROPERTY SUBJECT TO AN UNRECORDED EASEMENT FOR TEXAS EASTERN'S PIPELINE. ....................... 13

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

Cases                                                                                                                    Page(s)

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986) ........................................................................................... 2

Casamasino v. City of Jersey City,
   158 N.J. 333, (1999) ......................................................................................... 10

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ........................................................................................... 2

In re Baby T.,
   160 N.J. 332 (1999) .......................................................................................... 10

Knorr v. Smeal,
   178 N.J. 169, (2003) ......................................................................................... 10

O'Keefe v. Snyder,
   83 N.J. 478, (1980) ............................................................................................ 9

State v. U.S. Steel Corp.,
   22 N.J. 341, (1956) .......................................................................................... 10

W.V. Pangborne & Co. v. N.J. Dep't of Transp.,
   116 N.J. 543 (1989) .......................................................................................... 10

**PRELIMINARY STATEMENT**

Faced with a motion that raises several dispositive legal issues, Defendant Coles Jersey Development Co., LLC ("Coles Jersey") fails to address any of them directly. Coles Jersey cites no facts that dispute the facts upon which Texas Eastern Transmission, LP ("Texas Eastern") relies for the relief set forth in its moving papers. With no material facts in dispute, the Court should find that Coles Jersey not only waived any claim for compensation for a permanent easement on the 0.077 acre portion of Block 6005, Lot 7 (the "Property") at issue here, it actually acquired title subject to the rights of Texas Eastern.

Coles Jersey does not dispute the material facts relevant to Texas Eastern's motion, rather, it attempts to tell the same story from the perspective of William Ackman, a principal of Coles Jersey. While Mr. Ackman's money may have funded the purchase of the Property, he had almost no personal knowledge of the negotiations among Texas Eastern, Daniel Gans and Ogden Realty Co. ("Ogden Realty") or the Property he purchased. Daniel Gans, whom Coles Jersey admits was its "'Authorized Person' permitted to execute and deliver documents at the closing", had all the knowledge of the negotiations with Texas Eastern in which he personally participated, and the Property upon which he completed extensive due diligence. When Daniel Gans signed the release at the closing with Ogden formally waiving any right to participate in the settlement proceeds with Texas Eastern (the "Coles Release"), he did so with full knowledge of the scope and subject of the release acting as an authorized signatory of Coles Jersey. Even as Coles Jersey attempts to introduce daylight between the ubiquitous involvement of Daniel Gans at closing and the indifferent unfamiliarity of the details of William Ackman, the record documents contradict Coles Jersey's arguments.

1

While Ackman may have come to the deal late, he did so based on the actions and recommendation of Daniel Gans. While Ackman may have taken a gamble to close on a property so quickly and "without due diligence," Texas Eastern made clear to his predecessors and agent the nature of its easement and the terms of payment for that easement. In fact, it was based on the diligence of Texas Eastern that the title issue was raised in the first place resulting in a settlement it expected all parties to honor. Accordingly, the Court should grant Texas Eastern's Motion for Summary Judgment finding that Coles Jersey acquired Block 6005, Lot 7, subject to the permanent easement rights of Texas Eastern without further requirement for compensation already paid to Coles Jersey's grantor, Ogden.

## LEGAL ARGUMENT

**I.   DEFENDANTS HAVE SET FORTH NO ISSUES OF MATERIAL FACT THAT REFUTE THE ARGUMENT THAT COLES JERSEY DEVELOPMENT CO., LLC WAIVED ITS RIGHT TO COMPENSATION FOR THE LOT 7 EASEMENT AS A MATTER OF LAW.**

**A. Coles Jersey's Recharacterization of Texas Eastern's Undisputed Facts Fails to Raise a Genuine Issue of Fact.**

Defendants have been unable to provide the Court with competent evidence to oppose or refute Texas Eastern's argument that Coles Jersey waived its right to compensation for the additional permanent easement area on Lot 7. The responsive pleadings fail to overcome the record evidence established by Texas Eastern and demonstrate "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In order to survive a motion for summary judgment, the non-moving party must then present more than the "mere existence of a scintilla of evidence." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Defendants "may not rest upon the mere allegations…of his pleading

2

but…must set forth specific facts showing that there is a genuine issue for trial." Id. at 248. There are no facts presented by Defendant in a counter-statement of material facts, and the naked allegations do not warrant adjudication in this matter by a fact finder. Id. ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.")

Defendants' general denials to Texas Eastern's Statement of Undisputed Facts are not supported by documents. In many cases the evidence relied upon to deny factual evidence are merely irrelevant assertions by William Ackman who does not contradict the factual testimony of Dan Gans or the document record. Such "conclusory allegations or suspicions" raised in Defendant's declaration do fail to meet the burden Defendant faces in opposing Texas Eastern's motion for summary judgment. McCabe v. Ernst & Young, LLP, 494 F.3d 418, 436-7 (3rd Cir. 2007) (to survive summary judgment "a party must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue"). Whether or not Coles Jersey waived compensation for the additional permanent easement and should be equitably estopped from seeking additional compensation is a legal question ripe for the Court to decide based on the record of undisputed facts.

Coles Jersey has limited its opposition to a single argument- the unambiguous release signed by Dan Gans at closing does not bind Coles Jersey because only William Ackman could bind Coles Jersey to release the proceeds of the Prior Ogden Action. In light of Coles Jersey's admission that Gans was its "Authorized Person" at closing (see Defendant's Brief at p. 6-7), Coles Jersey's argument strains credibility and fails when the record is fully considered. Coles Jersey expressly waived any compensation for the permanent easement on the same 0.077 acre

portion of Block 6005, Lot 7 at issue in this matter for which Texas Eastern paid Ogden, Coles Jersey's grantor, in the Coles Release signed by Gans, Coles Jersey's agent at closing.

### B. The Coles Release.

At the July 3, 2013 closing, Daniel Gans, signed a release binding "Hoboken Brownstone Company, its heirs, successors, predecessor and assigns". (the "Coles Release") Ash Cert., Ex. H (Document 45-12, p. 42). Coles Jersey attempts to distance itself from the Release, arguing that it was singed by Dan Gans in the name of "Hoboken Brownstone Company" and therefore does not bind Coles Jersey. However, "Hoboken Brownstone Company" is not a legal entity, but rather a "trade name" used by Dan Gans and George Vallone in the course of their real estate development business. Statement of Undisputed Material Facts, ¶29. Coles Jersey was the legal entity behind the "Hoboken Brownstone Company" trade name for this deal and was the sole reason Gans was required to sign the Coles Release. *There was no other purpose for Gans to sign the Release at the closing if not to bind Coles Jersey.*

After the June 13, 2013 settlement meeting with Texas Eastern, Ogden Realty, Co. and Gans, allocating all of the easement settlement proceeds to Ogden negotiated an allocation and distribution between them of the settlement proceeds of $3,500,000.00. Statement of Undisputed Material Facts, ¶18. Gans, Hoboken Brownstone and its successors and assigns, agreed that the acquisition of the Property would not include participation in the condemnation settlement proceeds negotiated among Ogden Realty, Hoboken Brownstone, and Texas Eastern. Statement of Undisputed Material Facts, ¶24. Based on these terms, Coles Jersey, with Gans as its "Authorized Person" at closing acquired the Property from Ogden Realty.

4

### C. The Prior Purchaser Release.

Coles Jersey's argument that the Release only binds Hoboken Brownstone fails when the Prior Purchaser Release is considered. Ogden sought releases from both the prior purchaser and Coles Jersey, the actual purchaser, to make clear that all easement settlement proceeds gained be allocated to Ogden. The clear intent of the Coles Release is to bind Coles Jersey, the eventual purchaser, which was not a party to the Prior Purchaser Release. To find otherwise would render the Coles Release completely extraneous. Daniel Gans signed two releases at closing – the broad Prior Purchaser Release for CH Acquisitions 2, LLC, the prior purchaser, to waive all claims against Ogden Realty (including a claim for a portion of the condemnation settlement proceeds) and the specific Coles Release for the actual purchaser to waive its claim for a portion of the condemnation settlement proceeds.

Under the prior purchase and sale agreement between Ogden and CH Acquisitions 2, LLC (the "Prior Purchase Agreement"), CH Acquisitions 2, LLC, the purchaser of the Property, was entitled to proceeds from the settlement of the Prior Action. Once Gans, through Hoboken Brownstone, negotiated new terms for Ogden to convey the Property to Coles Jersey, only the *new purchaser* had to waive the proceeds from the settlement of the Prior Action. This is precisely the purpose of the Coles Release signed by Gans at closing as the authorized agent of Coles Jersey.

Furthermore, the Coles Release binds Coles Jersey as the purchaser of the Property, because the former purchaser of the Property, CH Acquisitions 2, LLC, ***signed a separate release prior to closing***. A "Settlement Agreement and Mutual Release" was signed by CH ACQUISITION 2, LLC, JERSEY CITY NORTH, LLC, HOBOKEN BROWNSTONE

5

COMPANY, a registered trademark of West Bank Realty, Inc., and Ogden Realty.  Ash Cert., Ex. H (Document 45-12, p. 44).  Based upon the terms of the Settlement Agreement and Mutual Release the prior purchase and sale agreement was terminated upon the return of a $2,190,000.00 deposit to CH ACQUISITIONS 2, LLC and $300,000 to JERSEY CITY NORTH, LLC.  Id.  The mutual release between all parties to the prior April 12, 2013 Purchase and Sale Agreement included broad language:

> "irrevocably and forever unconditionally releases, remits, acquits and discharges the other and its employees, officers, members, directors, representatives, agents, servants, attorneys, affiliates, parent, subsidiary, successor and assigns, and all persons, firms, corporations and organizations acting on its behalf, from and against any and all past, present and future actions (including, without limitation, the Dispute), causes of action, claims, counterclaims, suits, rights, demands, damages, injunctive or declaratory relief, costs, expenses, accounts, judgments, executions, debts, losses, obligations, rights of contribution or indemnification, attorneys' fees, and any and all other liabilities of any kind or nature or description whatsoever, whether arising at law or in equity, under Federal law, State law, common law or any other law, whether known or unknown, asserted or unasserted, express or implied, foreseen or unforeseen, suspected or unsuspected, which such party ever had, presently has, may have, or claim or assert to have, against the other from the beginning of time until the date of this Agreement in connection with the P&S Agreement (including, but without limitation, the assignments thereof described herein) and/or the transaction contemplated thereby."

Id.  This broad mutual release applies to all parties under the prior purchase and sale agreement as to all claims.  Based on this Prior Purchaser Release, the prior purchaser and Hoboken Brownstone released any claim to a portion of the Texas Eastern condemnation settlement proceeds.

### D. The Absence of a Formal Purchase and Sale Agreement Does Not Change Gans' Agency.

Coles Jersey was the assignee of the material terms negotiated between Ogden Realty and Daniel Gans of Hoboken Brownstone. Coles Jersey argues that there was no "purchase and sale agreement between Coles Jersey and Ogden". (Defendant's Brief, p. 15). While there was no written contract for the purchase of real estate (in defiance of the statute of frauds), clearly Gans negotiated terms on which Ogden agreed to sell the Property to Coles Jersey. The terms negotiated by Dan Gans (and eventually agreed to by Bill Ackman) on or about July 1, 2013 were as follows: 1) the purchase price for the Property was $22,000,000; 2) there would be no contract with Ogden Realty; 3) Ogden would receive all the settlement proceeds from Spectra and there would be no allocation of the settlement to Gans and Coles Jersey including the permanent easement rights for a portion of Block 6005, Lot 7; and 4) closing would occur on or before July 3, 2013. Statement of Undisputed Material Facts, ¶24. While there was no formal "writing" memorializing other terms of a real estate transaction, clearly an agreement was reached pursuant to which Ackman paid $22,000,000 for Ogden's property.

Moreover, the parties relied on the due diligence collected during the executory period of the April 12, 2013 Purchase and Sale Agreement including title searches and environmental investigation reports. In fact, at the July 3, 2013 closing, Coles Jersey accepted a "Down Date Certificate of Ogden Realty Co. affirming that "all representations and warranties of Ogden Realty Co. set forth in the Agreement of Sale dated April 12, 2013 remain true and correct as of the date of Closing". Ash Cert., Ex. H (Document 45-12, p. 50). The Down Date Certificate was prepared for the initial, abandoned, closing with the prior purchaser "Jersey City North, LLC"

7

and the entity "Coles Jersey Development Co., LLC" *was written-in by hand* on the document and relies on the title commitment ordered for the prior purchaser:

> **DOWN DATE CERTICATE OF OGDEN REALTY CO.,**
> **A NEW JERSEY PARTNERSHIP**
>
> The undersigned, being the Partners of Ogden Realty Co., a New Jersey Partnership, which is the Seller of real property located in Jersey City, New Jersey, identified on the Tax Map of the City of Jersey City as Lots 2, 3 and 4 in Block No. 6003; Lots 1 and 2 in Block 6004; and Lots 13 and 7 in Block 6005 to ~~Jersey City North,~~ Coles Jersey Development Co NJ (PW) LLC, a ~~Delaware~~ Limited Liability Company, hereby state, to the best of their knowledge and belief, that all representations and warranties of Ogden Realty Co. set forth in the Agreement of Sale dated April 12, 2013 remain true and correct as of the date of Closing, excepting a portion of the operations of American Self Storage MGMT Assoc., LLC encroaching upon 305 Coles Street (Block 6005, Lots 13 and 7).
>
> *Donna Walsh*
> DONNA WALSH
>
> *Patricia Wisniewski*
> PATRICIA WISNIEWSKI
>
> Dated: July _3_, 2013

Ash Cert., Ex. H (Document 45-12, p. 29).

For Coles Jersey to argue there was "no agreement" belies the fact that negotiations occurred, due diligence occurred, closing documents were drafted, and a closing took place in-person at Ogden's attorneys' office to close a transaction that (while atypical) was the result of agreement between the two parties. The individual who handled the communications, negotiations, drafting and attendance at closing was Daniel Gans- not Bill Ackman. There is no dispute that Daniel Gans was an "Authorized Person" who could sign documents on behalf of

8

Coles Jersey at closing. Coles Jersey was the assignee of the deal negotiated by Gans and assigned to Coles Jersey. Accordingly, the Release is binding on Coles Jersey.

By signing the Release, Gans, on behalf of Hoboken Brownstone and Coles Jersey, voluntarily and knowingly relinquished the right to compensation for the permanent easement on the 0.077 acre portion of Block 6005, Lot 7 at issue in this case. The waiver of additional compensation for the same easement is clear and unequivocal. Texas Eastern must be given the full benefit of its bargain negotiated in good faith without further proceeding in this matter against the same parties.

## II. THE COURT SHOULD FIND THAT COLES JERSEY IS EQUITABLY ESTOPPED FROM PURSUING ADDITIONAL COMPENSATION.

Coles Jersey never directly addresses Texas Eastern's argument that it should be equitably estopped from seeking compensation for the same easement rights negotiated among Daniel Gans, Texas Eastern and Ogden Realty because Coles Jersey cannot assert a credible defense. There are no facts as to the relationship of the parties or conduct of the parties that resulted in the settlement that Coles Jersey can dispute. Instead, Coles Jersey argues that it should not be bound as a third party to a contract it did not sign. As Point I made clear, Coles Jersey was party to the Release and should be bound by the Release. The equitable estoppel argument on which Texas Eastern should prevail relates to the fundamental fairness of the deal effectively struck by the parties, Texas Eastern's reliance on settlement negotiations, payment of settlement proceeds of $3,500,000.00, and now facing the possibility of paying Coles Jersey's assigns an additional $3,000,000.00 *for the same easement rights*.

New Jersey Courts have taken an expansive and flexible approach in the application of equitable defenses. O'Keefe v. Snyder, 83 N.J. 478, 517, (1980) (discussing equitable estoppel's

9

broad application); see also State v. U.S. Steel Corp., 22 N.J. 341, 357, (1956) (stating that "[t]he latitude within which the doctrine may serve is in complete consonance with its reason"). Equitable estoppel, for example, is a doctrine "'founded in the fundamental duty of fair dealing imposed by law.'" Knorr v. Smeal, 178 N.J. 169, 178, (2003) (quoting Casamasino v. City of Jersey City, 158 N.J. 333, 354, (1999)). As explained in Knorr,

> [t]he doctrine is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment. The doctrine is invoked in the interests of justice, morality and common fairness.

Id. (quotation marks and citations omitted); see also, W.V. Pangborne & Co. v. N.J. Dep't of Transp., 116 N.J. 543, 553 (1989) (describing equitable estoppel a "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity from asserting rights which might perhaps have otherwise existed … as against another person, who has in good faith relied upon such conduct, and has been let thereby to change his position for the worse." Equitable estoppel allows consideration of a range of factors, including "the relationship of the parties, the surrounding circumstances giving rise to the litigation, and the nature of the claims and defenses as between the parties." In re Baby T., 160 N.J. 332, 347 (1999). In considering the doctrine, a court must apply "a close and focused analysis of the interests of the parties and the circumstances giving rise to the claims and defenses, a weighing of the equities." Id. at 348.

Coles Jersey tries to distance itself from the dealing of the parties by inserting the perspective of negotiations from William Ackman. Rather than dispute the story of how the 2013 transaction unfolded or how the parties dealt with each other, Coles Jersey relies on Ackman's ignorance of the details of the negotiations and resolution between the parties. See,

Defendant's Counterstatement of Material Facts (Document 50-2, ¶19). It is not surprising that Ackman had no personal knowledge of the dealings of the parties; he was involved in the deal for less than a week before he agreed to wire the $22,000,000.00 purchase price on July 3, 2013. While Ackman may have been ignorant of key details, Daniel Gans certainly had full knowledge of the history of dealings amongst the parties:

- Through the June 4, 2013 meeting and June 5, 2013 letter, Gans was fully aware of Texas Eastern's desire for additional permanent easement rights on the 0.077 acre portion of Block 6005, Lot 7; Statement of Undisputed Material Facts, ¶14.
- By participating in the June 13, 2013 settlement conference Gans understood that the grant of additional permanent easement rights on the 0.077 acre portion of Block 6005, Lot 7 was a material term of the settlement with Ogden; Statement of Undisputed Material Facts, ¶¶15-17.
- Gans negotiated an allocation of the settlement proceeds with Ogden Realty that specifically referenced the grant of additional permanent easement rights on the 0.077 acre portion of Block 6005, Lot 7 at issue here as the "corner piece" having an imputed value of $255,000; Statement of Undisputed Material Facts, ¶18.
- When CH Acquisitions 2, LLC terminated the April 2013 Purchase and Sale Agreement, Gans entered into a new agreement with Ogden Realty for the purchase of Block 6005 in which the buyer expressly forfeited participation in the settlement proceeds from the Prior Ogden Action; Statement of Undisputed Material Facts, ¶24.

It is with this full knowledge of all the details of negotiations between the parties that Daniel Gans signed the Coles Release at closing waiving proceeds to the condemnation settlement. Based on correspondence relating to the preparation of closing documents, it is clear

Daniel Gans directed the preparation of the Coles Release. On July 2, 2013, Paul Hennessy, on behalf of Ogden Realty, wrote to the attorneys for the parties who indicated "Texas Eastern/Spectra Energy will be looking for a release wherein Hoboken Brownstone is waiving any claim to the condemnation proceeds. As I look at the form of release that was circulated, it doesn't appear to provide for that." Ash Cert., Ex. I (Document 45-12, p. 50). Daniel Gans responded to the request minutes later and authorized the preparation of the Coles Release by Ogden Realty's attorney. Id. Gans understood the intent of preparing and ultimately signing the Coles Release was for the *actual* purchaser of the Property to release claim to the condemnation settlement proceeds. A release from the buyer is precisely what Texas Eastern requested from the parties to the closing. And a release from the buyer is precisely what Ogden Realty's attorney promised to provide post-closing to conclude the settlement. In a July 3, 2013 letter, sent via email the same day as the closing with Coles Jersey (upon Gans signing the Coles Release), Ogden's counsel alerted Texas Eastern:

> "[a]s a result of further negotiations with Hoboken Brownstone Co., that entity is no longer involved in any transactions regarding the subject property. I have requested that they provide a Release waiving any interest in the proceeds of the within condemnation action. Obviously, the form of Consent Order for Final Judgment fixing compensation previously submitted to me required revision."

Wegener Cert., Ex. C. Only after Texas Eastern was notified that Gans and Hoboken Brownstone released and expressly waived compensation for the additional permanent easement rights on the 0.077 acre portion of Block 6005, Lot 7, did Texas Eastern enter into the Consent Order. Again, Texas Eastern reasonably relied on the representations of Gans, on behalf of the purchaser of the Property, and Ogden Realty's counsel, that the settlement negotiated on June 13, 2013 would be concluded. Texas Eastern paid the negotiated settlement compensation of

12

$3,500,000.00 but was later denied by Coles Jersey the additional permanent easement rights on the 0.077 acre portion of Block 6005, Lot 7 it expected in return. To Texas Eastern's detriment, Coles Jersey now seeks an additional $3,000,000.00 for the same easement rights Texas Eastern paid Ogden Realty to obtain. Based on the undisputed record, Coles Jersey must be estopped from asserting this claim for additional compensation. If William Ackman was unaware of the history of the Property he purchased, it is because he and Gans failed to communicate these facts. Texas Eastern must not be penalized for these omissions when it relied on the conduct of Gans and Wegener.

### III.   COLES JERSEY ACQUIRED TITLE TO THE PROPERTY SUBJECT TO AN UNRECORDED EASEMENT FOR TEXAS EASTERN'S PIPELINE.

Coles Jersey is not entitled to compensation for the additional permanent easement rights on Block 6005, Lot 7 because in addition to waiving the right to any proceeds from the condemnation settlement, Coles Jersey acquired the Property subject to an unrecorded easement for the 0.077 acre permanent easement. While William Ackman boasts he "literally did no diligence on this property", the documents in his possession and relied upon at closing indicate otherwise. See, Defendant's Counterstatement of Material Facts (Document 50-2, ¶15). The documents in the record indicate that Coles Jersey had actual knowledge of the existence of Texas Eastern's pipeline and permanent easement rights on the 0.077 acre portion of Block 6005, Lot 7.

The seller of the Property, Ogden Realty, was made aware of the pipeline installation in April, 2013. Texas Eastern's pipeline was installed in a portion of Block 6005, Lot 7 in March 2013. Statement of Undisputed Material Facts, ¶8. While surveying the as-built location of the

13

pipeline in March 2013, Texas Eastern agents identified a possible discrepancy between the property line of Block 6005, Lot 7 and Block 6005, Lot 13 depicted in the official municipal tax map and title documents. Id. As a result, the question as to the property boundary between Block 6005, Lot 7 and Lot 13 was communicated to counsel for Ogden Realty in the course of negotiations for the acquisition of easements on Tract HUD-98.3 (Block 6005, Lot 13). Id. This information was communicated to Ogden Realty's counsel by letter dated April 8, 2013 which enclosed a survey depicting the pipeline in the portion of Lot 7 with questionable title. See, Certification of Peter H. Wegener, Esq. (Document 45-3, ¶3).

The buyer of the Property, Coles Jersey, was made aware of the pipeline installation in June 2013, prior to purchasing the Property. In a meeting on June 4, 2013, Texas Eastern agents offered $3,000,000.00 to Hoboken Brownstone Co. as future owners of Tract HUD-98.3 (Block 6005, Lot 13). This offer was memorialized in correspondence to Daniel Gans dated June 5, 2013. Id. The June 5, 2013 letter to Daniel Gans included a survey referred to as "LPlat_HUD98.3 dated 3/18/13". Statement of Undisputed Material Facts, ¶14. The survey depicted the revised boundary of Block 6005, Lot 13 including the portion of Lot 7 in relation to the existing permanent and temporary easement areas. Id. Once in the possession of Daniel Gans, the location of the pipeline was included on the purchaser's survey. In a survey dated June 21, 2013, prepared for the prior purchaser, CH Acquisition, Note 13 described the following:

> "The subject premises, Block 6005, Lot 13 is subject to a Spectra Energy Underground Natural Gas Transmission Line, mapping of the location is pending. The proposed location of said gas line is shown on drawings prepared by SGC Engineering, LLC, Drawing No. LPLAT_HUD-98.3, dated 03/18/2013 and Drawing No. LD-P-9085, dated 04/09/2012."

See, Ash Sup. Cert., Ex. A. This note was included on a survey prior to the July 3, 2013 closing from Ogden Realty to Coles Jersey.

Coles Jersey opposes this motion insisting that it "paid $22 million for a deed" and furthermore, "[n]either that deed, nor the Seller's Affidavit of Title, nor the title policy, nor the land records, nor anything reflected an easement across Block 6005, Lot 7 in favor of Texas Eastern." Defendant's Brief, p. 17. However, Coles Jersey's Deed and survey directly contradict this statement. The July 2, 2013 Deed from Ogden Realty to Coles Jersey included the following language "SUBJECT to such state of facts as would be disclosed by an accurate survey, and further subject to easements, zoning requirements and other restrictions of record, if any." Ash Cert., Ex. H (Document 45-12, p. 4). The importance of this language cannot be understated. Coles Jersey's title expert was asked about this specific deed language in his deposition:

Q: The conveyance from Ogden Realty Co. to Coles Jersey Development Co., LLC was made subject to the state of facts as would be disclosed by an accurate survey, and further subject to easements, zoning requirements and other restrictions of record, if any." Do you see that?

A: Yes, I do.

Q: Is that pretty standard language in a deed in New Jersey?

A: Sometimes, I mean, it's – it typically, no, it wouldn't be included. I mean an attorney wouldn't want that in. **It's just very open-ended**. But yes, I've seen it in deeds.

Q: What does that mean when it's included in a deed?

A: They're just not warranting that they – that -- to these facts, that, you know, their description did not say they had a survey, that they're – they're making it subject to everything that I assume they had no knowledge of.

15

Ash Cert., Ex. K at 27:6-28:3 (emphasis added). Mr. Lofreddo further agreed that if Ogden Realty and Coles Jersey had a survey in their possession that showed the actual location of encumbrances on a survey, Coles Jersey took title subject to the encumbrance. Id. at 28:22-29:14. Once Coles Jersey acquired title to the Property, the survey was updated twice. A post-closing "progress print" of a "Topographic Survey" in the name of Coles Jersey Development Co., LLC, dated October 9, 2013 included the same Note 13 from the survey prepared for CH Acquisitions on June 21, 2013:

> "The subject premises, Block 6005, Lot 13 is subject to a Spectra Energy Underground Natural Gas Transmission Line, mapping of the location is pending. The proposed location of said gas line is shown on drawings prepared by SGC Engineering, LLC, Drawing No. LPLAT_HUD-98.3, dated 03/18/2013 and Drawing No. LD-P-9085, dated 04/09/2012."

See, Ash Sup. Cert., Ex. B. In a "ALTA/ASCM Land Title Survey" prepared for Coles Jersey dated October 17, 2013 the portion of Block 6005, Lot 7 formerly described as "an area of questionable title" is now described as "new permanent easement" accompanied by Note 11:

> "Part of Lot 7 and Lot 13 in Block 6005 is subject to an unrecorded permanent easement granted to Texas Eastern Transmission, LP which is shown on a map entitled: "Permanent Easement Location, Hudson County, New Jersey, City of Jersey City, Tract HUD-98.3", prepared by SGC Engineering, LLC, dated September 30, 2012, Alignment Sheet No. LD-A-1077, DWG. No. HUD-98.3."

See, Ash Sup. Cert., Ex. C. Coles Jersey's own survey notes that the Property is subject to "an unrecorded permanent easement granted to Texas Eastern Transmission, LP". The instant matter was filed January 9, 2014 to acquire the same permanent easement rights that Coles Jersey identified on a survey dated October 17, 2013 after taking title subject to the rights, having had actual knowledge of the existence of the permanent easement prior to closing. Coles

16

Jersey must be barred from seeking additional compensation for the easement rights already acquired by Texas Eastern.

## CONCLUSION

For the reasons set forth above, the Court should grant Texas Eastern's Motion for Summary Judgment finding that Coles Jersey acquired Block 6005, Lot 7, subject to the permanent easement rights of Texas Eastern without further requirement for compensation.

Respectfully submitted,

Dated: December 7, 2018

s/ Jeffrey D. Smith
Jeffrey D. Smith, Esq.
**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, New Jersey 07666
Tel.: (201) 928-1100
*Attorneys for Texas Eastern Transmission, LP*

17